UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JIM WALDEN,

                       Plaintiff,

     v.

PETER S. KOSINSKI, as the Co-Chair of the New York State Board of Elections; HENRY T. BERGER, as the Co-Chair of the New York State Board of Elections; ESSMA BAGNUOLA, as a Commissioner of the New York State Board of Elections; ANTHONY J. CASALE, as a Commissioner of the New York State Board of Elections; KRISTEN ZEBROWSKI STAVISKY, as Co-Executive Director of the New York State Board of Elections; RAYMOND J. RILEY III, as Co-Executive Director of the New York State Board of Elections; and the NEW YORK CITY BOARD OF ELECTIONS,

                       Defendants.

Civil No.:

**COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

---

This lawsuit seeks to remove an unconstitutional burden on Jim Walden's ability to run for the Office of the Mayor of New York City as the candidate of a new independent body called the "Independence Party." Walden seeks an Order (a) declaring that any enforcement of N.Y. Election Law § 6-138(3)(a) to bar Walden from using the words "Independence" or "Independent" to identify the independent body whose nomination he seeks would violate the Constitution, and enjoining such enforcement, or, in the alternative (b) declaring as unconstitutional and enjoining the enforcement of Election Law § 2-124(2) insofar as it prohibits an independent body from using the words "Independence" or "Independent" in its name.

**PRELIMINARY STATEMENT**

1. Walden is a candidate for New York City Mayor. He intends to file nominating petitions to become the candidate of an independent body, which he and his supporters want to call the "Independence Party," a political label with a significant history of appealing to voters dissatisfied with the major parties. Walden and his supporters wish to use this name to express

their desire for political change and associate together to form a viable alternative to the major political parties – core political speech entitled to the most robust protection under the First and Fourteenth Amendments. Those fundamental rights are at imminent risk.

2.      Consistent with New York's recent efforts to stifle competition against the Democratic and Republican parties, Defendants are highly likely to reject the nominating petitions Walden intends to file as the proposed nominee of an independent body named the Independence Party by construing the Election Law to bar an independent political body from using the words "Independence" or "Independent" in its name. Any such application of New York's election laws would violate Walden's constitutional rights.

3.      Walden thus seeks declaratory and injunctive relief that protects his right to associate with others to express their political views, including by circulating nominating petitions of an independent body named the Independence Party to nominate Walden as a candidate for Mayor. Absent such relief, the chilling effect of Defendants' highly likely rejection of his nominating petitions will prevent Walden from effectively organizing and conducting a petitioning campaign to gain access to the ballot.

## JURISDICTION AND VENUE

4.      This action arises under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

6.      Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

7.      Venue in this Court is appropriate under 28 U.S.C. § 1391(b)(3) and (c)(2).

## THE PARTIES

8.      Jim Walden resides in Kings County in the City and State of New York. On

October 24, 2024, he duly filed to run for Mayor of New York City. He has not been enrolled in any political party since 2006.

9. Defendants Peter S. Kosinski and Henry T. Berger are Co-Chairs of the New York State Board of Elections. Each is sued in his official capacity. The New York State Board of Elections is an agency within the Executive Department of the State and is responsible for administering and enforcing all laws relating to elections in New York State.

10. Defendants Essma Bagnuola and Anthony J. Casale are Commissioners of the New York State Board of Elections. They are sued in their official capacities.

11. Defendants Kristen Zebrowski Stavisky and Raymond J. Riley III are Co-Executive Directors of the New York State Board of Elections. They are sued in their official capacities.

12. Defendant New York City Board of Elections is the local board of elections responsible for administering the 2025 election for New York City Mayor, including processing, verifying and accepting or rejecting nominating petitions of independent bodies.

## RELEVANT PROVISIONS OF THE ELECTION LAW

13. There are two ways to obtain access to the ballot as a candidate for New York City Mayor: as the nominee of a "party" or by running as a candidate of an "independent body."

14. In New York election law, the word "party" has a specific and limited meaning. A "party" is defined as "any political organization which . . . at the last preceding election for governor received, at least two percent of the total votes cast for its candidate for governor, or one hundred thirty thousand votes, whichever is greater, in the year in which a governor is elected and at least two percent of the total votes cast for its candidate for president, or one hundred thirty thousand votes, whichever is greater, in a year when a president is elected." N.Y.

3

Election Law § 1-104 (3).

15. An "independent body" is different. It expresses the will of those who sign petitions to have a candidate run under its name, which often represents the values of the body and its candidate(s). An "independent body" is defined as "any organization or group of voters which nominates a candidate or candidates for office to be voted for at an election, and which is not a party as herein provided." *Id*. at § 1-104(12).

16. As amended in 2022, Election Law § 2-124(2) bans any political *party* from using the words "Independence" and "Independent" (or any form of these words) in its name. That statute does not address what names are permissible for an independent body.[1]

17. A different statute, N.Y. Election Law § 6-138(3)(a), governs the naming of an independent body. It does not prohibit use of the words "Independence" or "Independent."[2]

18. The independent body whose nomination Walden seeks will not nominate any

---

[1] As amended, N.Y. Election Law § 2-124(2) provides that:

> The name of a party shall be in the English language and shall not include the words "American", "United States", "National", "New York State", "Independence" or "Independent", or "Empire State", or any abbreviation or plural thereof, nor the name or part of the name, or an abbreviation of the name, of an existing party. . . . The name . . . chosen shall not be similar to or likely to create confusion with the name or emblem of any other existing party or independent body.

[2] New York Election Law § 6-138(3)(a) provides that:

> The name selected for the independent body making the nomination shall be in English characters and shall not include the name or part of the name or an abbreviation of the name or part of the name, nor shall the . . . name . . . create the possibility of confusion with the . . . name of a then existing party, or the emblem or name of an independent body selected by a previously filed independent nominating petition for the same office. Such name selected for such independent body shall continuously remain the name of such party as defined in subdivision three of section 1-104 of this chapter.

4

candidate for Governor or President. Therefore, that independent body could not become a "party" as defined in Election Law §1-104(3).

19. As set forth below, any enforcement of Election Law § 6-138(3)(a) or Election Law § 2-124(2) (collectively, the "Challenged Provisions") to ban Walden and his supporters from using the words "Independence" and "Independent" in the name of their independent political body would violate the First and Fourteenth Amendments.

**RELEVANT FACTS**

20. The original Independence Party – sometimes called the Independence League – was founded by publisher William Randolph Hearst in 1905 and embraced principles of reform, merit and progress. Hearst formed the Independence League, in part, due to the corruption of the Democratic Party machine of the day, often referred to as "Tammany Hall." The Independence League nominated candidates for several election cycles before disbanding.

21. In 1991, New York citizens dissatisfied with the choices offered by the major parties formed the Independence Party of New York as an independent body. In 1994, as a result of its success in statewide elections, it became a party as defined under the version of Election Law § 1-104(3) then in effect.

22. Over the following decades, the Independence Party was a prominent political party in New York. At the height of its power, it had more than 500,000 registered members.

23. Consistent with its non-partisan mission, the Independence Party cross-endorsed candidates from other parties. For example, it endorsed candidates also nominated by the major parties, including in races for Governor and Mayor of New York City.

24. In 2001, Michael Bloomberg appeared on the ballot in his first election for Mayor of New York City on the lines of both the Independence Party and the Republican Party. He won.

25. Mayor Bloomberg won again in 2005, running on the ballot lines of the Independence Party, the Republican Party, and the Liberal Party.

26. Mayor Bloomberg won again in 2009, running on both the Independence Party and Republican Party lines (although he left the Republican Party in 2008).

27. The Independence Party of New York lost its ballot status in 2020, because amendments to Election Law § 1-104(3) heightened the requirements for designation as a political party.

28. On January 17, 2021, a New York State Senator (the "Senator") sponsored Senate Bill S1851A to add "Independence" and "Independent" to the list of words that Election Law § 2-124(2) prohibits from being used in the name of a party. The bill was signed into law, and the amendment took effect on January 1, 2023.

29. Until it was amended, § 2-124(2) had prohibited only the following words to be used in the name of a political party: "American," "United States," "National," "New York State," and "Empire State." *See* Laws of 1954, ch. 433, § 1, Laws of 1976, ch. 233, § 1. Use of these words or phrases would directly suggest that the federal or state government supported the party.

30. That rationale does not apply to the words "Independent" or "Independence." There is no risk that any voter would construe such words as suggesting that the United States or New York State supported or endorsed a party describing itself as Independent.

31. The Senator apparently based his bill on a survey of 200 voters enrolled in the Independence Party of New York. The survey was conducted by a newspaper circa December 2012.

32. That newspaper reported that 85% of survey respondents – merely 169 voters statewide, substantially less than 1% of members of the party – thought they had enrolled in no party rather than in the Independence Party of New York.

33. The newspaper did not publish any qualitative information to demonstrate either the independence or reliability of its informal survey.

34. Yet, this stale newspaper survey was apparently the sole evidence on which the Senate relied to justify the amendment to § 2-124(2). *See* 2021 NY S.B. 1851, Committee Report ("The intent of the existing election law is that party names and symbols should avoid causing confusion to voters. However, evidence suggests that many voters who are registered as members of the Independence Party do not realize they are registered in the Party; they intended to register as independent (*i.e.*, unaffiliated) voters but were confused by the name of the Independence Party. This law would remove a major source of voter confusion.")

35. The Legislature's speculative conclusion that the Independence Party name "may" cause confusion and that "evidence suggests" confusion by some voters when they register to vote is a constitutionally inadequate basis to impose a blanket prohibition on the use of the words "Independence" or "Independent" in the name of a party.

36. The newspaper survey on which the Legislature relied apparently asked voters only about confusion when registering to vote.

37. Notably, although the Legislature did not acknowledge it, during the period when the newspaper conducted its survey, New York's voter registration form was itself somewhat confusing. It listed the no-party option in a list of parties, and after listing the Independence Party:

**Political party**
You must make 1 selection

To vote in a primary election, you must be enrolled in one of these listed parties — except the Independence Party, which permits non-enrolled voters to participate in certain primary elections.

13

☐ Democratic party
☐ Republican party
☐ Conservative party
☐ Working Families party
☐ Independence party
☐ Green party
☐ Other _____
☐ I do not wish to enroll in a party

7

38.	The Board of Elections revised the form in February 2015, three years after the newspaper survey and six years before the Legislature amended § 2-124(2) (the "Revised Form"). The Revised Form made the Political Party section of the form much clearer by identifying two distinct options – either enroll in one of the listed political parties, or choose not to enroll in any party:

**Political party**
You must make 1 selection

Political party enrollment is optional but that, in order to vote in a primary election of a political party, a voter must enroll in that political party, unless state party rules allow otherwise.

14

**I wish to enroll in a political party**
☐ Democratic party
☐ Republican party
☐ Conservative party
☐ Green party
☐ Working Families party
☐ Independence party
☐ Women's Equality party
☐ Reform party
☐ Other _____

**I do not wish to enroll in a political party**
☐ No party

39.	The current form, revised in January 2023, is identical to the Revised Form, except that it lists only the four currently recognized parties (the Democratic, Republican, Working Families, and Conservative parties).

40.	There was no evidence to support the Legislature's speculation that voters using the Revised Form were confused. None is noted in legislative history. None is referenced in the underlying bills.

41.	The Legislature amended § 2-124(2) not to reduce confusion, but to confer an unfair competitive advantage on the major parties and thus protect their unconstitutional duopoly. Yet, "all political ideas cannot and should not be channeled into the programs of our two major parties." *Williams v. Rhodes*, 393 U.S. 23, 39 (1968).

42.	As a candidate seeking the nomination of an independent body, Walden can obtain signatures from any registered voter, whether enrolled in a party or not. *See* N.Y. Election

8

Law § 6-138(1). By definition, all such persons will already have registered to vote.

43. Walden's campaign will circulate independent nominating petitions which will seek to nominate him for the Office of Mayor as a representative of this new independent body (which will not be affiliated with any existing political party or organization).

44. Given these facts, there is no material risk that any voter will be confused about Walden's use of the word "Independence" in the name of a new political body whose nomination he intends to seek. There is no other active party or independent body using that name in New York.

45. There is nothing confusing about Walden running on a platform that reflects his independence from the major parties and using a name for an independent body that directly reflects his political message. Yet Walden's core constitutional rights to associate with his supporters and express his political views are in imminent peril.

46. Context is important here. New York State elected officials have repeatedly attempted to reduce electoral competition, a bedrock of our democratic system, including by passing laws to increase requirements on third parties, taking direct action against those parties, and gerrymandering maps to suppress voter choice.

47. Tellingly, the two major parties control the administration of elections at the state level. The Commissioners of the New York State Board of Elections are appointed by the Governor from candidates recommended by the major political parties. Commissioners appointed on the recommendation of the Democratic and Republican parties share control over the Board of Elections. *See* N.Y. Election Law § 3-100 (1) & (2).

48. The same is true at the local level. The ten Commissioners of the New York City Board of Elections (two from each borough) are appointed upon recommendation by the two major political parties.

49. The two major parties have frequently acted to reduce competition and protect incumbents. Media reports are replete with stories of naked attempts to hurt small, independent parties in 2019 and 2020, in the lead-up to the recent ban on the use of the words "Independence" or "Independent" in the name of a political party.[3]

50. It is thus highly likely that Defendants will determine that the ban on the use of the words "Independence" and "Independent" applies also to the names of independent bodies. This threat of enforcement has a substantial chilling effect on Walden and his supporters.

51. The chilling effect on Walden's ability to run under the banner of the political organization of his choice is a grave constitutional harm. It deprives voters of an alternative to the major ballot-access parties that – for many years – have failed to solve problems, became enmeshed in many scandals and controversies, and have taken many other steps (including partisan gerrymandering after redistricting) to choke off competition.

52. Yet, a "burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment" and "discriminates against those candidates and—of particular importance—against those voters whose political preferences lie outside the existing political parties."

---

[3] *See, e.g.*, efforts against the Working Families Party (*Democrats' Plan Will Suppress Third Parties in New York*, https://www.nytimes.com/2019/11/25/nyregion/fusion-ballot-ny-working-families.html) (*Andrew Cuomo quietly presses to weaken political nemesis in New York*, https://www.politico.com/news/2019/10/27/andrew-cuomo-new-york-working-families-party-nemesis-057882); Green Party (*Green Party condemns Cuomo plan to kill third parties in state budget*, https://www.gp.org/gp_condemns_cuomo_plan); and Libertarian Party (*Killing off New York's Third parties - Not Today!*, https://www.gp.org/killing_off_ny_third_parties).

*Anderson v. Celebrezze*, 460 U.S. 780, 793–94 (1983).

53. Similar efforts to burden the associational rights of independent-minded candidates and voters in other states were rebuffed by honorable elected officials. In 2019, California State Senator Thomas Umberg sponsored a bill that would have added the word "Independent" to the list of banned words, a provision nearly identical to the recent amendment to N.Y. Election Law § 2-124(2).

54. Governor Gavin Newsom vetoed that bill, stating, "By requiring one existing political party to change its current name, this bill could be interpreted as a violation of the rights of free speech and association guaranteed by the First Amendment to the U.S. Constitution."

55. By contrast, the major parties in New York that dominate the Legislature chose to burden core First Amendment rights to protect their own political interests.

56. Any construction and enforcement of the Challenged Provisions that prohibits Walden from using the words "Independence" or "Independent" in the name of the independent body whose nomination he seeks would broadly and unnecessarily impinge on the constitutionally protected liberties of Walden and voters who support him.

57. If Defendants enforce either of the Challenged Provisions against him to ban him from using that name, Walden likely will be forced to abandon his efforts to run as a candidate unaffiliated with an established party.

**CLAIM FOR RELIEF**
(Declaratory Relief and Injunctive Relief)

58. Walden realleges the foregoing paragraphs as if fully set forth herein.

59. The First Amendment prohibits abridgement of freedom of political speech and freedom of association. The Fourteenth Amendment guarantees the equal protection of the laws.

60. Absent declaratory and injunctive relief, Walden will be unable to circulate petitions for a new independent body using a name that directly reflects its supporters' views.

61. Enforcement of either of the Challenged Provisions will impose a severe burden on the rights of Walden and voters who support him to associate together under the banner of an Independence Party to advance their political views.

62. The Legislature's invocation of voter confusion to justify the amendment to N.Y. Election Law § 2-124(2) is a pretext; the ban on the use of the words Independent or Independence reflects an effort to reduce electoral competition against the major parties.

63. No compelling interest justifies prohibiting the use of the words Independent or Independence to identify or describe a political party or independent body. Even if it did, the Challenged Provisions are not narrowly tailored to further any such interest.

64. Even assuming that the Challenged Provisions do not impose a severe burden on Walden, they still substantially infringe on his associational and expressive rights, and New York does not have a legitimate, reasonable, or nondiscriminatory interest that justifies prohibiting the use of the words Independent or Independence to identify or describe a political party or independent body.

65. The Challenged Provisions impose unreasonable and discriminatory burdens on Walden and voters who support him.

66. Whatever legitimate interest New York may have in reducing voter confusion can be vindicated with means far less sweeping and drastic than the blanket prohibition on use of the words Independent or Independence to identify or describe a party or independent body.

67. For the foregoing reasons, this Court should declare that any enforcement of N.Y. Election Law § 6-138(3)(a) and/or N.Y. Election Law § 2-124(2) that would bar Walden from

using the words Independence or Independent in the name of the independent body whose nomination he seeks would violate the Constitution.

### PRAYER FOR RELIEF

WHEREFORE, Walden respectfully prays that the Court enter an order:

A. Declaring that the N.Y. Election Law § 2-124(2) does not apply to the name of an independent body, and that N.Y. Election Law § 6-138(3)(a) does not bar Walden from using the words Independence or Independent in the name of an independent body;

B. Declaring, in the alternative, that, as applied to Walden, (1) to the extent that N.Y. Election Law § 2-124(2)'s ban on the use of the words "Independence" or "Independent" applies to the name of an independent body, it violates the First and Fourteenth Amendments to the U.S. Constitution, and (2) to the extent that N.Y. Election Law § 6-138(3)(a) bans the use of the words "Independence" or "Independent" in the name of an independent body, it violates the First and Fourteenth Amendments to the U.S. Constitution;

C. Enjoining Defendants and their agents from taking any action to enforce the Challenged Provisions against Walden;

D. In the alternative, enjoining Defendants from enforcing N.Y. Election Law § 5-304's February 14, 2025, deadline to change registration enrollment status against Walden pending the Court's decision in this action.

E. Granting Walden fees and costs allowable under the law, including attorneys' fees pursuant 42 U.S.C. § 1988; and

F. Granting Walden such other and further relief as this Court finds appropriate and equitable.

Dated: New York, New York
       January 6, 2025

                                                  Cuti Frisch PLLC

                                                  /s/ John R. Cuti
                                                John R. Cuti
                                                Andrew J. Frisch

                                                40 Fulton St., 17th Floor
                                                New York, NY 10038
                                                (212) 285-8000