UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

JIM WALDEN,

                          Plaintiff,

          v.

PETER S. KOSINSKI, as the Co-Chair of the New   York
State Board of Elections; HENRY T. BERGER, as the Co-
Chair of the New York State Board of Elections; ESSMA
BAGNUOLA, as a Commissioner of the New York State
Board of Elections; ANTHONY J. CASALE, as a
Commissioner of the New York State Board of Elections;
KRISTEN ZEBROWSKI STAVISKY, as Co-Executive
Director of the New York State Board of Elections;
RAYMOND J. RILEY III, as Co-Executive Director of the
New York State Board of Elections; and the NEW YORK
CITY BOARD OF ELECTIONS,

                          Defendants.
---------------------------------------------------------------

Civil No.: 25-cv-00072 (LDH)(TAM)

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Cuti Frisch PLLC
40 Fulton Street, 17th Fl.
New York, New York 10038
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

    Parties, Independent Bodies, and Ballot Access under the New York Election Law ........... 2

    Names of Parties and Independent Bodies ........................................................................... 4

    History of the Independence Party of New York .................................................................. 6

    The Legislature Limits Electoral Competition by Making it Harder
    to Become a Party .................................................................................................................. 7

    The Legislature Imposes the Independence Ban under the Pretext of
    Preventing Voter Confusion .................................................................................................. 8

    Walden's Campaign for Mayor Will Not Cause Confusion ................................................. 10

    The Major Parties Control Election Administration and the Legislature ............................. 12

    The Credible Threat that Defendants will Enforce the Independence
    Ban against Walden ............................................................................................................... 13

ARGUMENT ............................................................................................................................. 14

    I.  The Standard for Granting a Preliminary Injunction ....................................................... 14

    II.  Plaintiff is Likely to Prevail on the Merits .................................................................... 14

        A. Because the Independence Ban Imposes a Severe Burden on Walden's
           Campaign, it is Subject to Strict Scrutiny .............................................................. 14

        B.  The Independence Ban is Not Narrowly Tailored to Serve a Compelling State
           Interest, Nor Does it Advance any Legitimate State Goal .................................... 16

        C.  The Independence Ban Cannot Withstand Even Intermediate Scrutiny .................... 19

    III.  Plaintiff Will be Irreparably Harmed Absent an Injunction ................................... 20

    IV.  The Balance of Equities and the Public Interest Favor Plaintiff .................................... 21

CONCLUSION .......................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Sutton*, No. 24-cv-02224 (DG), 2024 WL 4050277
(E.D.N.Y. September 3, 2024) ........................................................................... 14, 21

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ................................................... 1, 19

*Bachrach v. Sec'y of Com.*, 382 Mass. 268 (Mass. 1981) ........................................ 16

*Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999) ..................... 16

*Burdick v. Takushi*, 504 U.S. 428 (1992) ............................................................. 15

*Credico v. New York State Bd. of Elections*, 751 F.Supp.2d 417 (E.D.N.Y 2010) ..................... 20

*Gleason v. Tutunjian*, 154 A.D.2d 834 (3d Dep't 1989) ...................................... 5

*Green Party of New York State v. New York State Bd. of Elections*,
389 F.3d 411 (2d Cir. 2004) ................................................................... 17, 18, 19, 20

*Green Party v. New York State Board of Election*, 267 F.Supp.2d 342 (E.D.N.Y. 2003) ............. 3

*Green Party of State of New York v. Weiner*, 216 F.Supp. 2d 176 (S.D.N.Y. 2002) ..... 12, 15, 17

*Lerman v. Bd. of Elections in City of N.Y.*, 232 F.3d 135 (2d Cir. 2000) ............................ *passim*

*Marcantonio v. Heffernan*, 192 Misc. 868 (Sup. Ct. N.Y. Co.),
*aff'd* 298 N.Y. 661 (N.Y. 1948) ................................................................... 4

*McDonough v. Tutunjian*, 136 Misc.2d 1039 (Sup. Ct. Rensselaer Co. 1987) ............................ 3

*New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483 (2d Cir. 2013) ............................ 20

*Norman v. Reed*, 502 U.S. 279 (1992) ................................................................. 1, 15

*Schmidt v. Kosinski*, 602 F.Supp.3d 339 (E.D.N.Y. 2022) ........................................ 14

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997) ................................. 19

*Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376 (2d Cir. 2000) ............................ 13

*Williams v. Rhodes*, 393 U.S. 23 (1989) ............................................................. 1, 15

**Statutes, Bills, Legislative History**

N.Y. Elec. Law § 1-104 ......................................................................... *passim*

N.Y. Elec. Law § 2-124 ......................................................................... *passim*

N.Y. Elec. Law § 3-100 ......................................................................... 12

N.Y. Elec. Law § 3-200 ......................................................................... 12

N.Y. Elec. Law § 5-300 ......................................................................... 3

N.Y. Elec. Law § 6-104 ......................................................................... 3

N.Y. Elec. Law § 6-138 ......................................................................... *passim*

N.Y. Elec. Law § 6-142 ......................................................................... 4

N.Y. Elec. Law § 6-154 ......................................................................... 4

N.Y. Elec. Law § 14-114 ........................................................................ 3

N.Y. Laws of 1954, ch. 433 § 1 ............................................................. 4

N.Y. Laws of 1976, ch. 233 § 1 ............................................................. 4

2021 Assembly Bill No. 1819 ................................................................ 8

2021 Senate Bill No. 1851 .................................................................... 8

2021 NY S.B. 1851, Committee Report ................................................. 8, 18

**Other Authorities**

David D. Biklen & Henry S. Cohn, *A Primer on Political Party Names*,
 16 Conn. L. Rev. 873 (1984) ............................................................. 4

New York State Board of Elections Opinion #15 (1978) ........................ 13

New York State Board of Elections Opinion #3 (1980) .......................... 13

## PRELIMINARY STATEMENT

Jim Walden is running for Mayor of New York City. Because he is not enrolled in one of the four political parties to which New York grants a line on the ballot, he must obtain thousands of signatures from registered voters and file nominating petitions to appear on the ballot as the candidate of what New York election law calls an "independent body." He and his supporters want to use the word "Independence" to define their organization, a name that directly reflects their political message. But, as Walden expects the Defendants will construe it, recently amended Election Law § 2-124(2) bans him from using the word "Independence" to name a political organization (the "Independence Ban").

This content-based restriction of core political speech unjustifiably imposes a severe burden on Walden's fundamental First Amendment rights. Associating with voters to express a political message "is at the core of our electoral process and our First Amendment freedoms." *Williams v. Rhodes*, 393 U.S. 23, 32 (1989). So too is the "right to create and develop new political" organizations, *Norman v. Reed*, 502 U.S. 279, 288 (1992), because when "independent-minded voters associate in the electoral arena to enhance their effectiveness as a group, [it] promotes diversity and competition in the marketplace of ideas." *Anderson v. Celebrezze*, 460 U.S. 780, 794 (1983). "Historically, political figures outside the two major parties have been fertile sources of new ideas and new programs," which is why "the primary values protected by the First Amendment . . . are served when election campaigns are not monopolized by the existing political parties." *Id.* (cleaned up). Walden wants to continue that tradition by running under the banner of Independence.

Enforcing the Independence Ban against Walden would stifle electoral competition by prohibiting an independent candidate from using the word Independence to describe the new

political organization he and his supporters are building. Such content-based regulation of core political speech cannot be enforced unless it survives strict scrutiny. *Lerman v. Bd. of Elections in City of N.Y.*, 232 F.3d 135, 146 (2d Cir. 2000). Indeed, "even practices that only potentially threaten political associations are highly suspect." *Id*. at 146-47 (internal quotation omitted). New York has legitimate interests in regulating elections, but none that remotely justifies banning Walden from using the word Independence in the name of his political organization.

This Court should preliminarily enjoin Defendants from enforcing this prohibition against Walden because Plaintiff:  (i) is likely to succeed on the merits because the Independence Ban plainly cannot survive strict, or even intermediate, scrutiny, (ii) will be irreparably harmed because the prospect of enforcement substantially chills the exercise of his First Amendment rights, and (iii) the balance of equities and the public interest both favor Plaintiff because a preliminary injunction will allow him to run using a political name that expresses his political message, and protecting First Amendment rights serves the public interest. Absent injunctive relief, the chilling effect of Defendants' anticipated rejection of his nominating petitions will prevent Walden from effectively organizing and conducting a petitioning campaign to gain access to the ballot.

## **STATEMENT OF FACTS**

The following facts are drawn from the declarations of Jim Walden ("Walden Decl."), Jacqueline Salit ("Salit Decl."), and John R. Cuti ("Cuti Decl."), all dated January 15, 2025, filed in support of this motion.

### *Parties, Independent Bodies, and Ballot Access under the New York Election Law*

There are two ways to obtain access to the ballot as a candidate for New York City Mayor: as the nominee of a "party" or as the nominee of an "independent body." Salit Decl. ¶ 3.

2

A "party" is defined as "any political organization which . . . at the last preceding election for governor received, at least two percent of the total votes cast for its candidate for governor, or one hundred thirty thousand votes, whichever is greater, in the year in which a governor is elected and at least two percent of the total votes cast for its candidate for president, or one hundred thirty thousand votes, whichever is greater, in a year when a president is elected." N.Y. Elec. Law § 1-104 (3). An "independent body" is defined as "any organization or group of voters which nominates a candidate or candidates for office to be voted for at an election, and which is not a party as herein provided." *Id*. at § 1-104(12).

"Thus, there are political organizations that are commonly and correctly referred to as political parties that are not 'parties' within the meaning of New York law. To avoid confusion [this brief] will use the upper-case term 'Party' to refer to political organizations that meet the above-quoted definition of 'party' in § 1-104(3)." *Green Party v. New York State Board of Election*, 267 F.Supp.2d 342, 344 (E.D.N.Y. 2003). Independent bodies are free to use the word "party" in their names, and often do, but that does not give them the rights afforded to a Party. *See McDonough v. Tutunjian*, 136 Misc.2d 1039, 1041 (Sup. Ct. Rensselaer Co. 1987).

New York law privileges Parties in many ways. A Party automatically has access to the ballot statewide, *id*. at §§ 6-104, 6-138(1); thus, Parties often are called "ballot-status parties." Salit Decl. ¶ 5. A Party can hold a closed primary or open primary election to choose a statewide candidate, N.Y. Elec. Law § 1-104(9); it is listed on New York's voter-registration form, allowing new voters to easily affiliate with the Party, *id*. § 5-300; and a Party can raise and spend money without limitation in support of its candidates, *id*. § 14-114. *See also* Salit Decl. ¶¶ 6-8. There are currently four Parties in New York: the Democratic, Republican, Conservative, and

Working Families Parties (the Democratic and Republican Parties, collectively, the "Major Parties"). Salit Decl. ¶ 9.

By contrast, an independent body is not automatically entitled to place a candidate on the ballot. Instead, one seeking to appear on an independent body's ballot line must obtain thousands of signatures from registered voters on nominating petitions, and then survive potential challenges to the validity of the petitions. N.Y. Elec. Law §§ 6-138, 6-142, 6-154; *see also* Salit Decl. ¶ 10.

### *Names of Parties and Independent Bodies*

New York law has long prohibited a Party from using a name or emblem likely to confuse voters because it is similar to the existing name of another Party or independent body. *See Marcantonio v. Heffernan*, 192 Misc. 868 (Sup. Ct. N.Y. Co.), *aff'd* 298 N.Y. 661 (N.Y. 1948). Since 1954, New York also has barred a Party from using the words "American", "United States", "National", "New York State", or "Empire State", in its name. N.Y. Laws of 1954, ch. 433 § 1 (amending Election Law § 20); N.Y. Laws of 1976, ch. 233 § 1 (recodifying § 20 as §2-124).[1]

---

[1] Until it was amended, § 2-124(2) had banned only those words – "American," "United States," "National," "New York State," and "Empire State" – from being used in a Party name. *See* Laws of 1954, ch. 433, § 1, Laws of 1976, ch. 233, § 1. Arguably, use of these words or phrases would directly suggest that the federal or state government supported the party, and therefore might be misleading. Nonetheless, this flat ban on the content of political speech may well be unconstitutional, *see* David D. Biklen & Henry S. Cohn, *A Primer on Political Party Names*, 16 Conn. L. Rev. 873, 883 (1984) ("New York's prohibition of the use of a party name that includes [these words] or any abbreviation thereof would probably not survive constitutional scrutiny"), but counsel has been unable to find a case in which the ban on these words was challenged. In any event, those words are not challenged here.

As explained below, in 2022, the Legislature amended this law to ban two new words, Independence and Independent.[2] By its terms, this statute applies only to Parties. A Party is prohibited from using any of the banned words, and from using a name that is similar to or likely to create confusion with the name of any existing Party or independent body. *See* N.Y. Elec. Law § 2-124(2). This statute does not address restrictions on the name of an independent body.

A different statute, N.Y. Elec. Law § 6-138(3)(a), governs the name of an independent body. That statute does not prohibit use of the words "Independence" or "Independent."[3] It prohibits an independent body from using a name that uses the name, abbreviation, or part of the name of an *existing* Party. Nor can an independent body use the name of another independent body that filed its nominating petitions first. *See* N.Y. Elec. Law § 6-138(3)(a); *see also Gleason v. Tutunjian*, 154 A.D.2d 834, 835 (3d Dep't 1989). Finally, § 6-138(3)(a) requires that the name chosen by the independent body must remain the same if the body later becomes a Party as defined in N.Y. Elec. Law § 1-104(3).

---

[2] As amended, N.Y. Elec. Law § 2-124(2) provides that:

> The name of a party shall be in the English language and shall not include the words "American", "United States", "National", "New York State", "Independence" or "Independent", or "Empire State", or any abbreviation or plural thereof, nor the name or part of the name, or an abbreviation of the name, of an existing party. . . . The name . . . chosen shall not be similar to or likely to create confusion with the name or emblem of any other existing party or independent body.

[3] New York Election Law § 6-138(3)(a) provides that:

> The name selected for the independent body making the nomination shall be in English characters and shall not include the name or part of the name or an abbreviation of the name or part of the name, nor shall the . . . name . . . create the possibility of confusion with the . . . name of a then existing party, or the emblem or name of an independent body selected by a previously filed independent nominating petition for the same office. Such name selected for such independent body shall continuously remain the name of such party as defined in subdivision three of section 1-104 of this chapter.

*History of the Independence Party of New York*

In 1991, New York citizens dissatisfied with the choices offered by the Major Parties formed the Independence Party of New York as an independent body. Salit Decl. ¶ 11. In 1994, as a result of its success in statewide elections, it became a Party as defined under the version of Election Law § 1-104(3) then in effect. *Id.* ¶ 12 & Ex. A. Its mission was to represent the interests of all independent-minded voters, whether they were enrolled in a Party or not. *Id.* ¶ 11. Over the following decades, the IPNY was a prominent political party in New York. At the height of its power, it had more than 500,000 registered members. *Id.* ¶ 13 & Ex. B.

Consistent with its non-partisan mission, the Independence Party both ran independent candidates and cross-endorsed candidates also nominated by the Major Parties, including in races for Governor and Mayor of New York City. Salit Decl. ¶ 14.  For example, in 2001, Michael Bloomberg appeared on the ballot in his first election for Mayor of New York City on the lines of both the Independence Party and the Republican Party. He won. *Id.* ¶ 15. Mayor Bloomberg won again in 2005, running on the ballot lines of the Independence Party, the Republican Party, and the Liberal Party. Mayor Bloomberg won again in 2009, running on both the Independence Party and Republican Party lines (although he left the Republican Party in 2008).  In both the 2001 and 2009 elections, Mayor Bloomberg would not have prevailed but for votes cast for him on the Independence Party line. *Id.* ¶¶ 16-17.

The Independence Party of New York lost its ballot status in 2020, because amendments to Election Law §1-104(3) heightened the threshold for qualifying as a Party. Salit Decl. ¶ 18.  It has not fielded a candidate since. *Id.* ¶ 19.

In 2021, Curtis Sliwa, the nominee of the Republican Party for Mayor, also obtained access to the ballot as the candidate of an independent body named the Independent Party. Salit

Decl. ¶ 20 & Ex. C. A rival challenged the nominating petitions, contending that listing a candidate of a new organization named the Independent Party on the ballot would confuse voters who might recall the former Independence Party. *Id.* ¶ 24 & Ex. F.  The New York City Board of Elections rejected that argument, determining that because that Independence Party no longer existed, there would be no confusion. *Id.*; *see also* N.Y. Elec. Law § 6-138(3)(a) (name of independent body cannot include name of, or risk confusion with, *existing* Party).

### The Legislature Limits Electoral Competition by Making it Harder to Become a Party

The Major Parties have frequently acted to reduce competition and protect incumbents. *See* Salit Decl. ¶¶ 25-28. For example, in 2018, Cynthia Nixon challenged Governor Andrew Cuomo for the nominations of the Democratic Party and the Working Families Parties ("WFP"). The media reported that the WFP's support for Nixon angered Governor Cuomo, who sought to weaken its power.[4] The Legislature created a Commission to revise the election laws, including by making it harder for minor parties to obtain ballot access, but the laws enacted as a result of that process were invalidated. *See Hurley v. Public Campaign Fin. & Election Commn.*, 69 Misc.3d 254 (Sup. Ct. Niagara Co. 2020) (holding that Legislature's creation of the Commission was an unconstitutional delegation of power). In April 2020, the Governor inserted the Commission's proposal to increase the thresholds for becoming a Party in the budget bill. Despite opposition from small parties,[5] less than two days later the Legislature enacted the budget, apparently

---

[4] *See, e.g.*, *Democrats' Plan Will Suppress Third Parties in New York* (https://www.nytimes.com/2019/11/25/nyregion/fusion-ballot-ny-working-families.html); *Andrew Cuomo Quietly Presses to Weaken Political Nemesis in New York* (https://www.politico.com/news/2019/10/27/andrew-cuomo-new-york-working-families-party-nemesis-057882).
[5] *See, e.g.*, *Green Party condemns Cuomo plan to kill third parties in state budget*, https://www.gp.org/gp_condemns_cuomo_plan); and Libertarian Party (*Killing off New York's Third parties - Not Today!*, https://www.gp.org/killing_off_ny_third_parties).

without any debate regarding the imposition of heightened ballot access standards for small parties. *See* https://legiscan.com/NY/bill/S07508/2019 (Budget bill enacted April 3, 2020).

**The Legislature Imposes the Independence Ban under the Pretext of Preventing Voter Confusion**

On January 11, 2021, several members of the Assembly introduced a bill to add "Independence" and "Independent" to the list of words that Election Law § 2-124(2) bans from use in a Party name. *See* 2021 Assembly Bill No. 1819. Several days later, a New York State Senator sponsored a bill proposing the same change. *See* 2021 Senate Bill No. 1851.

The Senator apparently based his bill on a survey of 200 voters enrolled in the Independence Party of New York. The survey was conducted by a newspaper in or around December 2012. Salit Decl. ¶ 21 & Ex. D. The newspaper reported that 85% of survey respondents – merely 169 voters statewide, just .04% of members of the party – thought they had enrolled in no party rather than in the Independence Party of New York. *Id.* ¶ 22 & Ex. E.  The newspaper did not publish any qualitative information to demonstrate either the reliability of its informal survey. *Id.* ¶ 22. Most pertinent here, it appears that the newspaper survey on which the Legislature relied asked voters only about confusion when registering to vote, *id.*, yet as explained below, the voter registration process will not be affected by Walden's use of the name Independence Party.

This survey apparently was the sole evidence on which the Senate relied to justify the amendment to § 2-124(2). *See* 2021 NY S.B. 1851, Committee Report ("The intent of the existing election law is that party names and symbols should avoid causing confusion to voters. However, evidence suggests that many voters who are registered as members of the Independence Party do not realize they are registered in the Party; they intended to register as independent (*i.e.*, unaffiliated) voters but were confused by the name of the Independence Party. This law would remove a major source of voter confusion.")

The sole potential confusion cited relates to those who are registering to vote. *Id.* And it is quite possible that voters in and before 2012 – when the survey was conducted – *were* confused because New York's voter registration form was itself somewhat confusing. It listed the no-party option in a list of parties:



*See* Cuti Decl. ¶ 2 & Ex A.

But that source of confusion was eliminated when the Board of Elections revised the form in February 2015, three years after the newspaper survey and six years before the Legislature amended § 2-124(2) (the "Revised Form"). The Revised Form substantially clarified the Political Party section by identifying two distinct options – either enroll in one of the listed political parties, or choose not to enroll in any party:



*See* Cuti Decl. ¶ 3 & Ex. B.

The current form, revised in January 2023, is identical to the Revised Form, except that it lists only the four currently recognized parties (the Democratic, Republican, Working Families, and Conservative parties):



*See* Cuti Decl. ¶ 4 & Ex. C.

There was no evidence to support the Legislature's speculation that voters using the Revised Form were confused. None is noted in legislative history. None is referenced in the underlying bills. Yet the Legislature enacted the Independence Ban.

Banning an independent candidate from using the word Independence in the name of his political organization plainly restricts speech based on its content. For example, a similar effort to burden the associational rights of independent-minded candidates and voters by banning use of the word Independent was made by the legislature in California. Cuti Decl. ¶ 5 & Ex. D. The bill did not become law because Governor Newsom vetoed it, correctly explaining that such a ban "could be interpreted as a violation of the rights of free speech and association guaranteed by the First Amendment to the U.S. Constitution." *Id*. ¶ 6 & Ex. E.

***Walden's Campaign for Mayor Will Not Cause Confusion***

Walden has not been enrolled in any political party since 2006. Walden Decl. ¶ 3. His core political message is independence from the Major Parties and the way they historically have conducted government. *Id*. ¶ 4. For example, his platform promises that he will not make

patronage appointments, will make City agencies subject to external review to prevent corruption, and will forbid his administration from doing favors for financial contributors. *Id*. ¶ 5. And Walden has promised to fight to end political gerrymandering, a longstanding practice designed to entrench the power and influence of the Major Parties. *Id*. Walden and his supporters wish to name their new independent body the Independence Party because that name directly reflects their political message. *Id*. ¶¶ 6-7.

As a candidate seeking the nomination of an independent body in the race for Mayor, Walden must file nominating petitions with thousands of valid signatures. *See* N.Y. Elec. Law § 6-142(2)(b). His campaign can obtain those signatures from any registered voter, whether enrolled in a party or not. *See* N.Y. Elec. Law § 6-138(1). By definition, all such persons will already have registered to vote.

The independent body whose nomination Walden seeks will not nominate any candidate for Governor or President. Walden Decl. ¶ 8. Therefore, that independent body could not become a "party" as defined in Election Law §1-104(3) – i.e., a "Party." Thus, the name of Walden's new independent body will never appear on New York's voter registration form (which lists only Parties). Salit Decl. ¶ 7. Therefore, Walden's use of the name Independence Party cannot cause confusion in the voter registration process.

Nor would there be confusion at the ballot box because only one candidate can appear on the ballot as the nominee of an organization named the Independence Party. *See* N.Y. Elec. Law § 6-138(3)(a). Indeed, although the Independence Party of New York nominated candidates to run in many elections between 1991 and 2020, it appears that use of "Independence" in the name of a political organization did not cause confusion either during the petitioning phase or in the polling booth. Salit Decl. ¶ 23; *see also id*. ¶ 24.

The campaign is actively engaged in promoting its message and planning for its petition drive using the Independence name. Walden Decl. ¶ 11. Among other things, the campaign is recruiting staff to circulate the nominating petitions, planning a communications strategy focused on spreading the independence message, and soliciting financial contributions by stressing Walden's message of political independence. *Id*. ¶ 12. The looming threat that Defendants will enforce the Independence Ban against his campaign inhibits Walden and his supporters from communicating their chosen message. *Id*. ¶ 14. If the Independence Ban is enforced against him, Walden and his supporters will have wasted their planning efforts and be compelled to change their political message and campaign strategy. *Id*. ¶ 15.

***The Major Parties Control Election Administration and the Legislature***

The Major Parties control the administration of elections at the state and local level. Salit Decl. ¶ 25. Several provisions of the Election Law "undoubtedly give the major political parties, (the Republican and Democratic Parties for all practical purposes) broad authority in supervising the administration of elections." *Green Party of State of New York v. Weiner*, 216 F. Supp. 2d 176, 193 (S.D.N.Y. 2002). "The major parties appoint election commissioners to both the state and local election boards. Election Law §§ 3–100, 3–200. In addition, local polling clerks and poll inspectors are nominated from lists submitted by the major parties. Election Law § 3–404." *Id*.

The Major Parties control the Legislature, which writes and enacts the Election Law, Salit Decl. ¶ 26, and they appoint or nominate virtually all of the judges of the New York courts. *Id*. ¶ 27. Because the cohort of voters not enrolled in, and/or not affiliated or self-identified with, any established political Party is rapidly growing, reducing the options on the ballot that might appeal to such independent-minded voters directly benefits the Major Parties. *Id*. ¶ 27. It appears

that the Legislature enacted the Independence Ban to repress the potential electoral power of independent voters and candidates and to protect the electoral prospects of candidates nominated by the Major Parties. *Id.*

**The Credible Threat that Defendants will Enforce the Independence Ban against Walden**

Walden does not concede that Election Law § 2-124(2) applies to the independent body he intends to form. Walden Decl. ¶ 13. To the contrary, the statute on its face applies *only* to Parties, not to independent bodies. *See* p. 5, *supra*; *see also* Cuti Decl. Ex. F (New York State Board of Elections Opinion #15 (1978)) (stating that the only pertinent part of § 2-124(2) regarding independent bodies is the provision that the "name and emblem chosen shall not be similar to or likely to create confusion with the name or emblem of any other existing party or independent body"), & Ex. G (New York State Board of Elections Opinion #3 (1980) (same)).

If Defendants agree that the Independence Ban does not apply to an independent body and thus will not be enforced against Walden, then this action would be moot and Plaintiff would voluntarily dismiss it. Walden Decl. ¶ 16. But given the Major Parties' control over the administration of the Mayoral election, the plainly pretextual "justification" for the Independence Ban, and the obvious interest the Major Parties have in suppressing competition, there is a credible threat that Defendants will seek to enforce the Independence Ban against Walden. *See Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000) (plaintiff asserting First Amendment rights has standing when there is a "credible threat" that statute proscribing his expressive conduct will be enforced). The danger of the Independence Ban "is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution." *Id.*

# ARGUMENT

The flat ban on using the word "Independence" to name a new political organization designed to express a political message of independence is a content-based restriction on core political speech. Thus, the Independence Ban is subject to strict scrutiny, which it cannot survive. Even if only intermediate scrutiny applied, enforcing the Independence Ban against Walden would be unconstitutional. Accordingly, the Court should enjoin Defendants from doing so.

## I.   The Standard for Granting a Preliminary Injunction

Walden is entitled to an order preliminarily enjoining Defendants from enforcing the Independence Ban against him if he shows "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Schmidt v. Kosinski*, 602 F. Supp.3d 339, 341 (E.D.N.Y. 2022).  As shown below, Walden has established all four factors.

## II.   Plaintiff is Likely to Prevail on the Merits

### A.   Because the Independence Ban Imposes a Severe Burden on Walden's Campaign, it is Subject to Strict Scrutiny

Walden asserts two claims: (i) that enforcing the Independence Ban to prevent him from using the word Independence to name his political organization violates his First Amendment rights of speech and association, and (ii) that prohibiting him from using the word Independence treats him worse than New York law treats the Major Parties, thus violating his Fourteenth Amendment right to equal protection of the laws.  *See* Cmplt. (ECF 1) ¶¶ 58-66.[6]

---

[6] To obtain injunctive relief, Walden need show a likelihood of success on the merits of only one of his claims. *Alexander v. Sutton*, No. 24-cv-02224 (DG), 2024 WL 4050277 at * 14 (E.D.N.Y. September 3, 2024).  This motion relies on the claim that the Independence Ban violatesWalden's First Amendment rights of free speech and association.

Associating with voters to express a political message "is at the core of our electoral process and our First Amendment freedoms." *Williams v. Rhodes*, 393 U.S. 23, 32 (1989). So too is the "right to create and develop new political parties." *Norman v. Reed*, 502 U.S. 279, 288 (1992). A minor party's circulation of nominating petitions "bears an intimate relationship to the right to political or expressive association." *Lerman v. Bd. of Elections in City of N.Y.*, 232 F.3d 135, 146 (2d Cir. 2000). Because these rights are "at the core of the First Amendment . . . even practices that only potentially threaten political association are highly suspect." *Id*. at 146-47.

"A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (cleaned up). "Ordinarily, policing this distinction between legitimate ballot access regulations and improper restrictions on interactive political speech does not lend itself to a bright line or 'litmus-paper test,' but instead requires a particularized assessment of the nature of the restriction and the degree to which it burdens those who challenge it." *Lerman*, 232 F.3d at 145-46 (cleaned up).

But this is not the ordinary case. Walden does not complain about the "mechanics" of election administration. *Id*. at 146; *see Green Party of State of New York v. Weiner*, 216 F. Supp. 2d 176, 187–88 (S.D.N.Y. 2002) (Lynch, J.) (citing examples of challenges to the "mechanics" of elections). Instead, Walden claims that New York directly targets and restricts his core political speech by flatly banning the use of the word Independence in the name of a political organization. The Independence name succinctly communicates Walden's political message to

voters. That is critical for Walden, as well as for voters. *See Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 220 (1986) ("To the extent that party labels provide a shorthand designation of the views of party candidates on matters of public concern, the identification of candidates with particular parties plays a role in the process by which voters inform themselves for the exercise of the franchise."). Yet, if Defendants enforce Election Law § 2-124(2) against Walden, he will be barred from using the word Independence in his party's name. Thus, the law directly restricts speech based on its content. *See Bachrach v. Sec'y of Com.*, 382 Mass. 268, 274–75 (Mass. 1981) (holding state law barring the word Independent from being used to identify a party or candidate on the ballot to be unconstitutional content-based restriction). As the Second Circuit has explained, such "'restrictions on core political speech so plainly impose a "severe burden"' that the application of strict scrutiny clearly will be necessary." *Lerman*, 232 F.3d at 146 (quoting *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 208 (1999) (Thomas, J., concurring), and citing *id*. at 192 n. 12 (opinion of the court)).

**B.    The Independence Ban is Not Narrowly Tailored to Serve a Compelling State Interest, Nor Does it Advance any Legitimate State Goal**

"When state election laws subject speech or political association to 'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Lerman*, 232 F.3d 135 at 145 (quoting *Burdick*, 504 U.S. at 434)). The Legislature invoked the purported risk of voter confusion to justify the Independence Ban. *See* pp. 8-10, *supra*. That was a pretext, and discovery is likely to reveal that the true motivation for the ban was to protect the duopoly of the Major Parties.[7] But for purposes of this motion, the Court can assume that New

---

[7] Because the severe burden imposed on Walden's expressive and associational rights requires strict scrutiny and the imminent threat to these First Amendment freedoms warrants a preliminary injunction, Walden need not show here that New York enacted the Independence

York has a compelling interest in preventing voter confusion. *See Green Party of New York State v. New York State Bd. of Elections*, 389 F.3d 411, 421 (2d Cir. 2004) ("We do not address the question of whether the goal of preventing voter confusion is a compelling one, because it obviously is").

But that is only half the battle. "The fact that the defendants' asserted interests are important in the abstract does not necessarily mean that its chosen means of regulation will in fact advance those interests." *Lerman*, 232 F.3d at 149 (internal quotations omitted). Therefore, an election regulation cannot survive strict scrutiny unless it is narrowly tailored to serve, and in fact is necessary to advance, the state's asserted interest in preventing confusion. *Green Party*, 389 F.3d at 421-22. *Green Party* is instructive. There, because the Green Party had achieved Party status, it was listed as a Party on the voter registration form, and many voters enrolled as members when they registered. But the Green Party lost Party status and became an independent body when it failed to garner enough votes in the 2002 gubernatorial election. *Id*. at 416. As a result, the Election Law required local boards of election to "erase the enrollment information of any member of a former Party and change the status of that individual to non-affiliated." *Id*. Plaintiff successfully moved for a preliminary injunction to prevent the boards from erasing the party affiliation of its members. *Id*. at 416-17. In affirming, the Second Circuit rejected defendants' argument that allowing voters to be registered as a member of the Green Party might confuse them into thinking they actually were a member of a ballot-status Party entitled to vote in a primary. *Id*. The Court did not reach the question whether this asserted rationale was

---

Ban with the invidious intent to discriminate. *See Weiner*, 216 F.Supp.2d at 188 (showing of intentional or purposeful deprivation of rights required to establish equal protection violation). After Defendants file their answers, Plaintiff intends to conduct party and non-party discovery to reveal the true impetus for enacting the Independence Ban.

persuasive because "this statutory provision is not necessary to prevent voter confusion in this case." *Id*. at 422. To the extent there was any risk of actual confusion, defendants could address it by updating the voter registration form. *Id*.

As with the law at issue in *Green Party*, the Independence Ban is neither narrowly tailored nor does it advance the legitimate interest in preventing voter confusion. The only risk of confusion cited by the Legislature was that "many voters who are registered as members of the Independence Party do not realize they are registered in the Party; they intended to register as independent (*i.e.*, unaffiliated) voters but were confused by the name of the Independence Party. This law would remove a major source of voter confusion." 2021 NY S.B. 1851, Committee Report. But an independent body is *not* listed on New York's voter registration form. *See* Cuti Decl. Ex. C. Therefore, the independent body that Walden wishes to name the Independence Party could never confuse a voter into registering as a member.

Nor is there any risk that a voter seeing Walden on an "Independence Party" line on the 2025 Mayoral ballot would be confused. No existing Party is called the Independence Party. There does not appear to be any independent body using that name, and even if there were, the first body to file nominating petitions under a name has the right to use it, and any other independent body that filed under that name would need to use a different name. *See* N.Y. Elec. Law § 6-138(a); *see also Gleason v. Tutunjian*, 154 A.D.2d 834, 835 (3d Dep't 1989). Thus, there can be only one "Independence Party" line on the ballot, and Walden's Independence Party would be the only one. There can be no confusion. The Independence Ban therefore is not narrowly tailored to further, and plainly is not necessary to achieve, the State's goal of avoiding voter confusion. Accordingly, the Independence Ban cannot survive strict scrutiny. *Green Party*, 389 F.2d at 421-22.

**C. The Independence Ban Cannot Withstand Even Intermediate Scrutiny**

As noted above, the Independence Ban imposes a severe burden because it is a content-based restriction on core political speech, and strict scrutiny applies. But the Independence Ban could not pass constitutional muster even under the intermediate standard of review.

Even absent a severe burden, a law that more than trivially burdens associational and expressive rights is not justified unless "the State's asserted regulatory interests [are] sufficiently weighty to justify the limitation imposed" on those rights. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997) (internal quotation omitted). In other words, "when a state election law 'imposes only reasonable, nondiscriminatory restrictions' upon First and Fourteenth Amendment rights, then 'the State's important regulatory interests are generally sufficient to justify the restrictions.'" *Lerman*, 232 F.3d at 145 (quoting *Burdick*, 504 U.S. at 434).

The problem for Defendants is that, insofar as they seek to enforce it against Walden, the Independence Ban is neither a reasonable nor nondiscriminatory regulation. Absent any real risk of confusion, it is unreasonable to impose a sweeping ban on using the words Independent or Independence in a political body's name when those terms were commonly used for decades in New York elections without any sign of confusion. Salit Decl. ¶ 23. If there were a risk of confusion regarding voter *registration* – although, here, there could not be – the reasonable tack is to make the registration process even clearer. *See Green Party*, 389 F.3d at 422. Moreover, the Independence Ban is discriminatory because, by definition, it will be applied only against minor parties seeking to challenge the Major Party duopoly. *See Anderson v. Celebrezze*, 460 U.S. 780, 793-94 (1983) ("A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the

First Amendment. It discriminates against those candidates and – of particular importance – against those voters whose political preferences lie outside the existing political parties.").

For the reasons stated above, the Independence Ban is a content-based restriction on core political speech. Under settled precedent, such a regulation imposes a severe burden and is subject to strict scrutiny. The Independence Ban cannot survive such scrutiny – or even intermediate scrutiny – because its sweeping restriction of political speech is not narrowly tailored to further, and in any event is not necessary to achieve, the State's legitimate goal of reducing voter confusion. Therefore, Walden is likely to prevail on the merits.

## III.    Plaintiff Will be Irreparably Harmed Absent an Injunction

Where, as here, "a First Amendment right has been violated, the irreparable harm requirement for the issuance of a preliminary injunction has been satisfied." *Green Party,* 389 F.3d at 418. *See also*, *e.g.*, *Credico v. New York State Bd. of Elections*, 751 F.Supp.2d 417, 420-21 (E.D.N.Y 2010) (because "[v]iolations of First Amendment rights are commonly considered irreparable injuries, I have no trouble concluding that plaintiffs have established that, in the event the injunction is not granted, they will suffer an irreparable injury") (internal quotation omitted).

The chill created by the credible threat that Defendants will enforce the Independence Ban against Walden inhibits him and his supporters from communicating their chosen message. That is irreparable injury. *See New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) ("'The harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as timing is of the essence in politics and a delay of even a day or two may be intolerable'") (quoting *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir.2009)).

**IV.     The Balance of Equities and the Public Interest Favor Plaintiff**

In cases in which government actors are parties, the balance-of-equities and public-interest analyses merge. *Anderson v. Sutton*, No. 24-cv-02224 (DG), 2024 WL 4050277 at * 14 (E.D.N.Y. September 3, 2024) (internal quotation omitted). In any event, both factors weigh heavily in Plaintiff's favor.

The equities tilt decidedly in favor of Walden. He seeks nothing more than to restore the status quo as it existed before the Legislature decided in 2022 to impose the Independence Ban, so that he and his supporters can express their political message by using the name Independence Party. Granting relief would not cause Defendants, or voters, any hardship. State and City elections officials have routinely administered elections in which a Party or an independent body ran under a name using the word Independence or Independent in its name, apparently without issue. *See* Salit Dec. ¶ 23. And no relief granted here will have any effect on voter registration, the sole area of purported concern to the Legislature that enacted the Independence Ban.

Preliminarily enjoining enforcement of the Independence Ban against Walden will protect his First Amendment rights. *See* Point II, *supra* (showing likelihood of success on the merits).  And securing First Amendment rights is in the public interest. *Sutton*, 2024 WL 4050277 at *14.

## CONCLUSION

For the foregoing reasons, the Court should enter an order preliminarily enjoining

Defendants from enforcing N.Y. Election Law § 2-124(2) against Walden.

Dated: New York, New York
      January 15, 2025

Respectfully submitted,

Cuti Frisch PLLC

 /s/ John R. Cuti
John R. Cuti
Andrew J. Frisch

40 Fulton St., 17th Floor
New York, NY 10038
(212) 285-8000

## CERTIFICATION

In accordance with Rule 7.1(c) of the Local Rules of the Southern and Eastern Districts of New York, I hereby certify that the Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction contains 6,528 words, exclusive of the caption, table of contents, table of authorities, and signature block, as established using the word count function of Microsoft Word.

_____
John R. Cuti