UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JIM WALDEN,

                              Plaintiff,

    v.

PETER S. KOSINSKI, as the Co-Chair of the New York State Board of Elections; HENRY T. BERGER, as the Co-Chair of the New York State Board of Elections; ESSMA BAGNUOLA, as a Commissioner of the New York State Board of Elections; ANTHONY J. CASALE, as a Commissioner of the New York State Board of Elections; KRISTEN ZEBROWSKI STAVISKY, as Co-Executive Director of the New York State Board of Elections; RAYMOND J. RILEY III, as Co-Executive Director of the New York State Board of Elections; and the NEW YORK CITY BOARD OF ELECTIONS,

                              Defendants.

Civil No. 25-cv-00072 (LDH)(TAM)

---

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Cuti Frisch PLLC
40 Fulton Street, 17th Fl.
New York, New York 10038
*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    I. Plaintiff's Claims Are Justiciable ................................................................................. 2

        A. Walden has Standing to Challenge Election Law §2-124(2) .................................. 2

        B. The Motion is Ripe Given the Credible Threat of Enforcement ............................ 3

        C. The State Board Defendants are Proper Parties ...................................................... 5

    II. The Independence Ban Violates Walden's First Amendment Rights .......................... 6

        A. The Independence Ban is Subject to Strict Scrutiny ............................................... 6

        B. The Independence Ban Does Not Serve Any Legitimate State Interest ................. 9

CONCLUSION ........................................................................................................................ 11

# TABLE OF AUTHORITIES

**CASES**

*Antonyuk v. James*,
　120 F.4th 941 (2d Cir. 2024) ................................................................................. 3

*Bachrach v. Secretary of Com.*,
　382 Mass. 268 (Mass. 1981) ................................................................................. 9

*Brooklyn NAACP v. Kosinski*,
　657 F.Supp. 3d 504 (S.D.N.Y. 2023) .................................................................... 4

*Buckley v. American Constitutional Law Foundation, Inc.*,
　525 U.S. 182 (1999) ............................................................................................... 4

*Carey v. Chiavaroli*,
　97 A.D.2d 981 (4th Dep't 1983) .......................................................................... 4

*Cerame v. Slack*,
　123 F.4th 72 (2d Cir. 2024) ....................................................................... 2, 3, 4, 5

*Chamness v. Bowen*,
　722 F.3d 1110 (9th Cir. 2013) .............................................................................. 8

*Davis v. Kosinski*,
　689 F.Appx. 665 (2d Cir. 2017) ........................................................................... 5

*Democratic Cong. Campaign Comm. v. Kosinski*,
　614 F.Supp. 3d 20 (S.D.N.Y. 2022) ..................................................................... 5

*Democratic-Republican Org. of New Jersey v. Guadagno*,
　700 F.3d 130 (3d Cir. 2012) ................................................................................. 9

*Gallagher v. New York State Bd. of Elections*,
　477 F.Supp. 3d 19 (S.D.N.Y. 2020) ..................................................................... 6

*Gleason v. Tutunjian*,
　154 A.D.2d 834 (3rd Dep't 1989) ........................................................................ 4

*In re Dairy Mart Convenience Stores, Inc.*,
　411 F.3d 367 (2d Cir. 2005) ................................................................................. 5

*Lerman v. Bd. of Election in the City of N.Y.*,
　232 F.3d 135 (2d Cir. 2000) ................................................................................. 6

*Libertarian Party of N.H. v. Gardner*,
    638 F.3d 6 (1st Cir. 2011) ............................................................................................. 9

*Marcellus v. Va. State Bd. of Elections*,
    849 F.3d 169 (4th Cir. 2017) ....................................................................................... 9

*Mazo v. New Jersey Sec'y of State*,
    54 F.4th 124 (3d Cir. 2022) ......................................................................................... 9

*McMillan v. N.Y.S. Board of Elections*,
    2010 WL 4065434 (E.D.N.Y. Oct. 15, 2010) ............................................................. 8

*Meyer v. Grant*,
    486 U.S. 414 (1988) ..................................................................................................... 6

*Ohio Council 8 Am. Fed'n of State v. Husted*,
    814 F.3d 329 (6th Cir. 2016) ....................................................................................... 9

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) .............................................................................................. 7, 11

*Republican Party of Minnesota v. White*,
    536 U.S. 765 (2002) ................................................................................................... 11

*Schrader v. Blackwell*,
    241 F.3d 783, 790 (6th Cir. 2001) ............................................................................... 9

*Schulz v. Williams*,
    44 F.3d 48 (2d Cir. 1994) ............................................................................................. 6

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ..................................................................................................... 2

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997) ..................................................................................................... 7

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008) ................................................................................................... 10

## **STATUTES**

N.Y. Elec. Law § 2-124 ............................................................................................... *passim*

N.Y. Elec. Law § 6-138 ............................................................................................... *passim*

**PRELIMINARY STATEMENT**

Unless the Court enjoins its enforcement, the Independence Ban will discriminate against Walden precisely because of the message he wants to convey. Plaintiff's moving brief explained that such a content-based restriction of core political speech is subject to strict scrutiny, but the State Board ignores this central point. Its tacit concession that the Independence Ban cannot survive strict scrutiny is echoed by the fact that the City Board, which is initially responsible for enforcing §6-138, does not oppose this motion.

The State Board thus tries to avoid the merits, but its non-justiciability arguments are baseless. Its contention that because §2-124(2) "*itself*" does not apply to independent bodies, Walden lacks standing to challenge it fails because the State Board knows that §2-124 *does* apply to independent bodies. Its contention that the case is unripe because the City Board may decide not to enforce §6-138 against Walden ignores the relaxed standing and ripeness rules that govern this pre-enforcement First Amendment challenge, and that its own papers make clear it intends to enforce the Independence Ban against Walden. Finally, courts have repeatedly rejected the State Board defendants' contentions that Walden lacks standing to sue them in their official capacities and that they enjoy Eleventh Amendment immunity.

The State Board's arguments on the merits are equally baseless. Unable to come to grips with the fact that Walden's planned petition drive in which circulators will ask voters to sign petitions nominating him as the candidate of an independent body named the Independence Party is core political speech, and that the Independence Ban is a content-based restriction subject to strict scrutiny, the State Board mischaracterizes Walden's claims and relies on inapposite cases. Nor has the State Board remotely shown that the Independence Ban is necessary to prevent voter confusion. To the contrary, its contention that the Independence Ban is necessary to prevent

voters from believing that the candidate of an Independence *Party* really represents all voters *not* enrolled in a party both underestimates the intelligence of voters and cannot be taken seriously because the Independence Ban is woefully underinclusive.

Walden needs an injunction now to dispel the substantial chill that impairs his ability to organize a petition drive under the Independence label.

## ARGUMENT

I. **Plaintiff's Claims Are Justiciable**

Walden has standing because he faces a "credible threat" that a statute proscribing expressive conduct will be enforced against him. *See* Mov. Br. at 13. The State Board ignores this argument, no doubt because the controlling law shows Walden has standing. The Court must "assess pre-enforcement First Amendment claims ... under somewhat relaxed standing and ripeness rules." *Cerame v. Slack*, 123 F.4th 72, 81 (2d Cir. 2024). To establish standing, a plaintiff need show only: "(1) 'an intention to engage in a course of conduct arguably affected with a constitutional interest'; (2) that the intended conduct is 'arguably proscribed by' the challenged regulation; and (3) that 'there exists a credible threat of prosecution thereunder' that is 'sufficiently imminent.'" *Id*.

Walden easily satisfies this test. Because his intended petitioning drive "concerns political speech, it is certainly 'affected with a constitutional interest.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014). The Independence Ban prohibits Walden's intended use of the word Independence. And, as shown below, there is a credible threat that the Independence Ban will be enforced against him.

   A. **Walden has Standing to Challenge Election Law §2-124(2)**

The State Board's baseless contention that Walden lacks standing to challenge §2-124(2)

relies on a mistaken assertion in Plaintiff's moving brief that §6-138(a) does not prohibit an independent body from using Independence in its name.[1] The State Board contends Walden lacks standing because he "does not face any 'concrete and particularized' injury caused by Section 2-124(2) *itself*." Op. Br. at 6 (original emphasis). But the State Board knows that §2-124(2) applies directly to independent bodies. *See* Stavisky Decl. ¶4 ("The name of the independent body, as provided by Election Law Section 6-138(3)(f) must not be similar to the name of any existing political party *and [must] conform to the requirements applicable to the names of political parties*.") (emphasis added); *id*. at ¶16 (stating that "Independent" or "Independence" cannot be used in name of independent body or party). Therefore, Walden has standing.

### B. The Motion is Ripe Given the Credible Threat of Enforcement

The Complaint alleges that Defendants are highly likely to enforce the Independence Ban against Walden. *See* ECF 1 at ¶¶2, 46-50; *see also* Walden Decl. ¶14. Walden invited the Defendants to disclaim the intention to do so, Walden Decl. ¶15, but they have not. The City Board has chosen to remain silent, *see* ECF 13, and the State Board's papers make clear that it will enforce the Independence Ban against Walden. *See* Op. Br. at 8 (suggesting that the Independence Ban applies, and noting only that "the State Board does not enforce that position *against local boards of elections*") (emphasis added). Particularly because "the bar for stating a credible threat of enforcement is 'low' and 'quite forgiving,'" *Antonyuk v. James*, 120 F.4th 941, 106 (2d Cir. 2024), that is more than enough to constitute a "credible threat" of enforcement. *See Cerame*, 123 F.4th at 85-86 (presumption that government will enforce recent laws, and failure

---

[1] *See* Mov. Br. at 5. Counsel mistakenly believed that only subdivision (a) of §6-138 contained restrictions on the name of independent bodies. A closer reading of the statute would have revealed that §6-138(f) incorporates §2-124(2)'s restrictions on Party names.

to disavow enforcement show credible threat); *id*. at 87 (rejecting claim that "a long string of hypothetical events would have to occur" for law to be applied to plaintiff because "standing may exist when an individual is subject to a substantial risk of an enforcement action that he claims deters his exercise of constitutional rights"). Thus, Walden's plausible allegation that he intends to engage in speech proscribed by the challenged statutes "gives rise to a credible threat of enforcement." *Id*. at 87-88.

The State Board again ignores the controlling law, insisting that Walden must take his chances – conduct a petition drive using the Independence Party name, but then risk being excluded from the ballot altogether if the City Board or State Board later invoke the Independence Ban to invalidate his nominating petitions. *See* Op. Br. at 8-9, 11. Walden will face extreme prejudice unless the Court enjoins Defendants. If Walden pursues his plan to obtain enough petition signatures to nominate him as the candidate of an independent body named the Independence Party, but then the City or State Board invalidates those petitions because they violate the Independence Ban, Walden may be prevented from appearing on the ballot, given decisions holding that if the name of an independent body is rejected for any reason other than a different independent body filing with the same name first, then there is no right to cure. *See Carey v. Chiavaroli*, 97 A.D.2d 981 (4th Dep't 1983); *Gleason v. Tutunjian*, 154 A.D.2d 834 (3rd Dep't 1989).

That is why the existence of a credible threat of enforcement alone makes this case justiciable. *See Brooklyn NAACP v. Kosinski*, 657 F.Supp. 3d 504, 518 (S.D.N.Y. 2023) ("a credible threat of present or future prosecution itself works an injury that is sufficient to confer standing, even if there is no history of past enforcement."). Because Walden reasonably fears that a statute infringing his expressive rights will be enforced against him, the court must decide

the issue lest it place his "First Amendment rights 'at the sufferance'" of the enforcing agency. *Cerame*, 123 F.4th at 87.

Ignoring the controlling law, the State Board contends, Op. Br. at 9, that Walden's purported "attempt to manufacture standing" is "foreclosed" by the summary order in *Davis v. Kosinski*, 689 F.Appx. 665, 667 (2d Cir. 2017). *Davis* is inapposite. Davis sought to persuade voters to call for a Constitutional Convention; he filed suit more than a year before the election at which voters could do so, claiming he was injured because he could not truthfully campaign to be elected Convention-delegate as a non-partisan candidate because the law required him to submit petitions identifying the name and emblem of the nominating body. *Id*. at 667-69. Davis lacked standing because it was entirely speculative whether, in the next election, voters would call for a Convention in the first place. *Id*. at 669. This case is entirely different. Walden is running as a non-partisan candidate, and understands that he must do so as the nominee of an independent body. But, unlike in *Davis*, Walden is prohibited from using a name that precisely communicates his message to voters.

### C. The State Board Defendants are Proper Parties

The State Board defendants contend that any injury Walden faces is not traceable to them but only to the City Board, and that the Eleventh Amendment immunizes them from suit. Op. Br. at 10-12. That is wrong. The Eleventh Amendment permits suits against State officials seeking to enjoin a violation of federal constitutional rights so long as those officials have "some connection" to enforcing the challenged law. *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372-73 (2d Cir. 2005). And the State Board is directly involved in enforcing the Independence Ban. Thus, courts have repeatedly rejected the State Board's baseless standing argument, *see*, *e.g.*, *Democratic Cong. Campaign Comm. v. Kosinski*, 614 F.Supp. 3d 20, 45–46

(S.D.N.Y. 2022) (rejecting argument that plaintiff's injuries were not redressable by the State Board because it has "the ultimate responsibility for enforcing the election laws"); *Gallagher v. New York State Bd. of Elections*, 477 F.Supp. 3d 19, 36–37 (S.D.N.Y. 2020) (rejecting State Board's argument that injuries not traceable to it because City Board responsible for enforcement), and the Second Circuit has rejected the same Eleventh Amendment argument the State Board makes here. *Schulz v. Williams*, 44 F.3d 48, 61 n.13 (2d Cir. 1994).

## II. The Independence Ban Violates Walden's First Amendment Rights

### A. The Independence Ban is Subject to Strict Scrutiny

Walden intends to have circulators interact with voters to ask them to sign petitions nominating him as the candidate of the Independence Party. Walden Reply Decl. ¶1. Such "petition circulation activity . . . , while part of the ballot access process, clearly constitute[s] core political speech[.]" *Lerman v. Bd. of Election in the City of N.Y.*, 232 F.3d 135, 146 (2d Cir. 2000); *see also Meyer v. Grant*, 486 U.S. 414, 421-22 (1988) ("[T]he circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech'"). Both courts applied strict scrutiny and invalidated laws restricting who could qualify as a petition circulator. *Lerman*, 232 F.3d at 146 (requirement that circulator reside in district where she circulated petitions); *Meyer*, 486 U.S. at 424-28 (prohibition on use of paid circulators). If those indirect restrictions on core political speech were subject to strict scrutiny, then *a fortiori* so is the Independence Ban's direct restriction of core political speech. "When a State's election law directly regulates core political speech, we have always subjected the challenged restriction to strict scrutiny." *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 207 (1999) (Thomas, J., concurring).

Strict scrutiny also applies because the Independence Ban is a facially content-based

6

restriction on protected speech. The State Board concedes that the Independence Ban prohibits Walden from using the word Independence to name his political body because using that word would "connote an association" with the category of independent voters. Stavisky Decl. ¶15. In other words, the Independence Ban prohibits Walden's intended speech "because of the . . . message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Such "[c]ontent-based laws – those that target speech based on its communicative content – are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id*.

Again ignoring the controlling law, the State Board insists that Walden's claim is "foreclosed" because political parties do not have a First Amendment right to "'use the ballot itself to send a particularized message' to its candidate and to voters." Op. Br. at 14 (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 362-63 (1997)). *Timmons* does not help the State Board. There, the New Party asserted a First Amendment right to place a candidate on the ballot even if that candidate already would appear on the ballot as a different party's candidate. To be sure, the Court noted that ballots "serve primarily to elect candidates, not as forums for political expression," *id*. at 362, and rejected the New Party's claim because Minnesota had valid interests "in ballot integrity and political stability." *Id*. at 370. But the New Party was free to nominate a different candidate, or to persuade the candidate who had secured another party's nomination to appear as its candidate instead. *Id*. at 360. In other words, "[l]ike all parties in Minnesota, the New Party is able to use the ballot to communicate information about itself and its candidate to voters, so long as that candidate is not already someone else's candidate." *Id*. at 362.[2] Walden does not seek to use the ballot as a forum for expression. He

---

[2] Unlike Minnesota, New York permits fusion voting. *Timmons*, 520 U.S. at 357.

7

simply wants to be listed on the ballot as the candidate of a body named the Independence Party. But he will never have that chance unless Defendants are enjoined from enforcing the Independence Ban against him at the petitioning stage.

The State Board's suggestion that Walden claims an "unqualified right to put whatever term [he] wishes on the ballot," Op. Br. at 14 (citing *McMillan v. N.Y.S. Board of Elections*, 2010 WL 4065434, *10 (E.D.N.Y. Oct. 15, 2010), is baseless. Walden wishes only to use a word – Independence – that directly expresses his political message and that had long appeared on New York ballots. *McMillan* is irrelevant; there, McMillan's party's name – "Rent is Too Damn High" – exceeded the 15-character limit that was enforced against all parties equally. When he failed to respond to the Board's requests to shorten the name, the Board shortened it to fit on the ballot. *Id*. at *7.

The State Board also claims that *Chamness v. Bowen*, 722 F.3d 1110 (9th Cir. 2013), supports the Independence Ban. Op. Br. 15. *Chamness* is beside the point. There, California did not permit *any* candidate to appear on the primary ballot as the nominee of a political party; instead, candidates could choose only to display their "party preference." A candidate not wishing to list a preference for a recognized party could select "No preference" or leave the space blank. *Id*. at 1113. The law did not prohibit particular names; it simply required any candidate who did not prefer an established party to state No Preference, an accurate description. This case is entirely different. Walden wants to *create a political body and run as its nominee.* New York, unlike California, permits candidates to appear on the ballot as a party or body's nominee. And unlike California law, the Independence Ban singles out a particular party name

and prohibits it because of its communicative content.[3]

The State Board acknowledges that the Court in *Bachrach v. Secretary of Com.*, 382 Mass. 268 (Mass. 1981), invalidated a law that prohibited a candidate from using the word Independent on the ballot, but seeks to minimize its importance because it was decided before the *Anderson-Burdick* framework was announced. Op. Br. at 15. But *Bachrach* employed the same analysis that the Supreme Court and Second Circuit use when a law imposes a content-based restriction on core political speech. *See* 382 Mass. at 276-77.

### B. The Independence Ban Does Not Serve Any Legitimate State Interest

The State Board has not shown that the Independence Ban is necessary to serve the government's legitimate interest in preventing voter confusion. Having disavowed any claim that voters would be confused because there used to be an Independence Party of New York, Op. Br. at 18, all that remains is anecdotal evidence that some people were confused *when registering to vote* because the voter registration form – at least before 2019 – could be read to suggest that enrolling in the then-existing Independence Party was the same thing as registering as an

---

[3] The cases the State Board string-cites, Op. Br. at 15, do not support its argument because none of them involved a prohibition on a party name. *See Mazo v. New Jersey Sec'y of State*, 54 F.4th 124, 146 (3d Cir. 2022) (candidate wishing to appear on ballot next to name of other person or entity required to obtain that person or entity's consent); *Marcellus v. Va. State Bd. of Elections*, 849 F.3d 169, 177 (4th Cir. 2017) (law permitted candidates for statewide, but not local, office to list party name on ballot); *Ohio Council 8 Am. Fed'n of State v. Husted*, 814 F.3d 329, 335-36 (6th Cir. 2016) (law prohibited candidates for judicial office from listing party affiliation); *Democratic-Republican Org. of New Jersey v. Guadagno*, 700 F.3d 130 (3d Cir. 2012) (upholding law preventing independent body from using name of existing party as ballot slogan); *Libertarian Party of N.H. v. Gardner*, 638 F.3d 6, 15 (1st Cir. 2011) (rejecting claim by candidate of Libertarian party to strike designation of Libertarian appearing next to different candidate's name); *Schrader v. Blackwell*, 241 F.3d 783, 790 (6th Cir. 2001) (upholding Ohio law permitting only nominees of established parties to include party designation on ballot).

independent voter not enrolled in a Party. *See* Stavisky Decl. ¶¶12, 16 & Exhs. B and C.[4]  But this case does not involve voter registration. Walden's circulators can obtain petition signatures only from registered voters, *see* Walden Decl. ¶6, and Walden's independent body will never become a ballot-status Party that appears on the registration form. *Id*. ¶8.

The State Board is reduced to conclusory assertions that the Independence Ban is "premised on avoiding confusion by means of ballot label attachment to an existing class of voter registrants," Stavisky Decl. ¶8, and will prevent candidates from using the word Independence somehow to "glom[] onto a category of voters used in the voter registration and ballot access process to connote an association that no singular independent body can own." *Id*. ¶15. Apparently, the argument is that allowing Walden to petition and then run as the nominee of an independent body named the Independence Party will trick voters into thinking that his political organization speaks for every voter who chose not to enroll in a party. That makes no sense because Walden's independent body will include the word *Party* in its name. In any event, the assertion "that voters will misinterpret the" name of Walden's organization "is sheer speculation [which] depends upon the belief that voters can be misled by party labels. But our cases reflect a greater faith in the ability of individual voters to inform themselves about campaign issues." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 454–55 (2008) (cleaned up).

---

[4] The State Board revised the voter registration form in 2019 "to provide clarity" to persons not wishing to enroll as a member of a Party by adding "the option, in plain language: 'I do not want to enroll in any political party and wish to be an independent voter' followed by a check box labeled 'No Party.'" *See* Stavisky Decl. ¶¶10-12. Yet the State Board did *not* submit the 2019 form. Plaintiff has done so. *See* Cuti Reply Decl. Exh. A. Because that form also included an option for voters to register as a member of the Independence Party, the State Board plainly did not believe voters would be confused when given a choice to register as an unaffiliated "independent" or to enroll as a member of the Independence Party. *Id*.

Finally, these purported justifications cannot be taken seriously because the Independence Ban is woefully underinclusive. If the State truly had an interest in preventing a candidate from using a label that signaled that he represented the entire category of voters not enrolled in or affiliated with a political party, then it would prohibit a candidate from using words or phrases like "Nonpartisan," "Unaffiliated," or "No Party" – all of which communicate the same message that "Independent" and "Independence" do. That it does not shows that its asserted interest is a "challenge to the credulous." *Republican Party of Minnesota v. White*, 536 U.S. 765, 780 (2002) (rejecting State's assertion that it restricted judicial campaign speech to protect its interest in an open-minded judiciary when it permitted judges to engage in the same speech when not campaigning); *Reed*, 576 U.S. at 167 (2015) (refusing to credit Town's purported interest in protecting aesthetics by banning certain signs because it permitted other signs that created the same problem).

## **CONCLUSION**

Because Walden is likely to prevail on the merits, and because the balance of equities and public interest decidedly favor protecting his First Amendment rights, this Court should enjoin Defendants from enforcing the Independence Ban against him.                                               .

Dated: New York, New York
      February 7, 2025

                                              Respectfully submitted,

                                              Cuti Frisch PLLC

                                               /s/ John R. Cuti
                                              John R. Cuti
                                              Andrew J. Frisch

                                              40 Fulton St., 17th Floor
                                              New York, NY 10038
                                              (212) 285-8000

# **CERTIFICATION**

In accordance with Rule 7.1(c) of the Local Rules of the Southern and Eastern Districts of New York, I hereby certify that the Reply Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction contains 3,492 words, exclusive of the caption, table of contents, table of authorities, and signature block, as established using the word count function of Microsoft Word.

_____
John R. Cuti