UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JIM WALDEN,

                Plaintiff,

    -against-

PETER S. KOSINSKI, as the Co-Chair of the New
York State Board of Elections; HENRY T.
BERGER, as the Co-Chair of the New York State
Board of Elections; ESSMA BAGNUOLA, as a
Commissioner of the New York State Board of
Elections; ANTHONY J. CASALE, as a
Commissioner of the New York State Board of
Elections; KRISTEN ZEBROWSKI STAVISKY,
as Co-Executive Director of the New York State
Board of Elections; RAYMOND J. RILEY III, as
Co-Executive Director of the New York State
Board of Elections; and the NEW YORK CITY
BOARD OF ELECTIONS,

                Defendant.

**MEMORANDUM AND ORDER**
25-cv-00072 (LDH) (TAM)

---

LASHANN DEARCY HALL, United States District Judge:

Jim Walden ("Plaintiff") seeks a preliminary injunction to enjoin Peter S. Kosinski, in his

official capacity as the Co-Chair of the New York State Board of Elections (the "State BOE");

Henry T. Berger, in his official capacity as the Co-Chair of the State BOE; Essma Bagnuola, in

her official capacity as a Commissioner of the State BOE; Anthony J. Casale, in his official

capacity as a Commissioner of the State BOE; Kristen Zebrowski Stavisky, in her official

capacity as Co-Executive Director of the State BOE; and Raymond J. Riley, III, in his official

capacity as Co-Executive Director of the State BOE (collectively, the "State BOE Defendants"),

as well as the New York City Board of Elections (the "City BOE") (collectively, "Defendants")

from prohibiting the use of the word "Independence" in the name of the prospective independent body for which Plaintiff intends to run as the nominee in the 2025 New York City mayoral election.  (Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. ("Pl.'s Mem.") at 1–2, ECF No. 15-1.)  The Court heard oral argument on March 14, 2025.

## BACKGROUND

Plaintiff is a prospective candidate for Mayor of New York City in the upcoming 2025 election.  (Compl. ¶ 1, ECF No. 1.)  Under New York State election law, to be listed on the ballot as a mayoral candidate, an individual must be the nominee of an established political party (a "Party") or the nominee of an independent body.  (Decl. of Jacqueline Salit ("Salit Decl.") ¶ 3, ECF No. 15-4.)  Pursuant to N.Y. Elec. Law § 1-104(3), a Party is defined as:

> any political organization which . . . at the last preceding election for governor received, at least two percent of the total votes cast for its candidate for governor, or one hundred thirty thousand votes, whichever is greater, in the year in which a governor is elected and at least two percent of the total votes cast for its candidate for president, or one hundred thirty thousand votes, whichever is greater, in a year when a president is elected.

There are currently four established Parties in New York:  Democratic, Republican, Conservative, and Working Families.  (Salit Decl. ¶ 9.)

Parties are given automatic access to the ballot for national, statewide, and local elections without the need to solicit and submit signatures from registered voters.  *See* N.Y. Elec. Law §§ 6-104, 6-110, 6-120; (Salit Decl. ¶ 5).  The Party's state or county committee is responsible for determining which candidate will be listed on the ballot for each office.  *See* N.Y. Elec. Law §§ 6-104, 6-108, 6-110, 6-118, 6-120.  If multiple candidates in a Party seek the nomination for a particular office, the Party must hold a primary election to determine which candidate will receive the Party nomination in the general election.  *Id*. § 6-160.  The candidate who receives the majority vote in the primary becomes the nominee of the Party.  *Id*.  On voter registration

forms, voters are given the option to enroll as a member of a Party, or to register as an "independent voter." N.Y. Elec. Law § 5-300; (*See* Decl. of Kristen Zebrowski Stavisky ("Stavisky Decl.") ¶ 11; Stavisky Decl., Ex. A, New York State Voter Registration Form.)

An independent body is defined as "any organization or group of voters which nominates a candidate or candidates for office to be voted for at an election, and which is not a [Party]." N.Y. Elec. Law § 1-104(12).[1] Voters are not given the option to enroll as a member of a particular independent body, as they would a particular Party, on voter enrollment forms. (*See* Stavisky Decl. ¶ 11; New York State Voter Registration Form.) Moreover, an independent body is not given automatic access to the ballot for elections. Instead, a candidate for office who intends to run as the nominee for an independent body must first obtain a prescribed number of signatures from registered voters on an independent nominating petition, submit that petition to their local board of elections, and have that petition deemed valid by the local board of elections. N.Y. Elec. Law §§ 6-138, 6-142, 6-144, 6-158; (Stavisky Decl. ¶ 17). Independent nominating petitions "for an office or position to be voted for wholly within the city of New York," such as mayor, must be filed with the City BOE. N.Y. Elec. Law § 6-144. The City BOE is then responsible for "processing, verifying and accepting or rejecting nominating petitions of independent bodies." (*See* Compl. ¶ 12.) Any challenge to the local board of election's validity determination on an independent nominating petition must be filed in the state supreme court in the relevant judicial district. N.Y. Elec. Law § 16-102.

As relevant here, Parties are subject to certain naming restrictions under N.Y. Elec. Law § 2-124. Specifically, Section 2-124(2) bars prospective Parties from adopting a name that is

---

[1] An independent body may become a Party when it meets the requirements of a Party as defined in N.Y. Elec. Law § 1-104(3). That is, to become a Party, an independent body must nominate a candidate for governor and a candidate for president, and then must receive the greater of at least two percent of the total votes cast, or one hundred thirty thousand votes for each office. *Id.* § 1-104(3).

"similar to or likely to create confusion with" the name of an existing party or independent body. *Id*. § 2-124(2). Under Section 2-124(2), Parties are prohibited from using the words "American," "Empire State," "United States," "National," or "New York State" in their Party name. *Id*. In 2022, the New York State Legislature amended Section 2-124(2) to add the words "Independence" and "Independent" to the list of prohibited words (the "Independence Ban"). *Id*.

Under N.Y. Elec. Law § 6-138, prospective independent bodies are prohibited from adopting a name that "include[s] the name or part of the name or an abbreviation of the name or part of the name," or that "create[s] the possibility of confusion with[,] the . . . name of a then existing [P]arty, or the . . . name of an independent body selected by a previously filed independent nominating petition for the same office." *Id*. § 6-138(3)(a). Section 6-138(3) does not set forth any restrictions on specific words, nor was the statute similarly amended to include any such preclusion. *See id*. However, by reference to Section 2-124(2), Section 6-138(3)(f) extends the naming prohibitions in Section 2-124(2), specifically the Independence Ban, to independent bodies.[2] *Id*. § 6-138(3)(f). If an independent body later becomes a Party, its name must remain unchanged. *Id*. § 6-138(3)(a).

Plaintiff seeks to establish an independent body called the "Independence Party," a name that he alleges reflects his "core political message" of independence from the four established Parties in New York. (Pl.'s Mem. at 15.) To be listed on the ballot for mayor in the 2025

---

[2] At the hearing on Plaintiff's motion for a preliminary injunction, this Court expressed open skepticism that Section 2-124(2)'s prohibition on the use of certain words, including "Independence," applied wholesale to independent bodies. (Tr. of Mar. 14, 2025 Hearing ("Hearing Tr.") at 6:21–7:7.) Based on this Court's initial reading of Section 6-138(3)(f), it concluded that certain conditions precedent must be met before Section 2-124(2) is triggered. (*Id*.) Those conditions are not met here. Nonetheless, the City BOE has signaled, and Plaintiff has doggedly insisted, that Section 6-138(3)(f) renders Section 2-124(2) applicable to independent bodies without qualification. (*See* Pl.'s Ltr. dated Mar. 19, 2025, ECF No. 19.) On this point, Plaintiff directed the Court to an Erie Supreme Court case, *Healy-Case v. Garcia*, where the court assumes, without deciding, that Section 6-138(3)(f) extends the Party name restrictions to independent bodies. *See* 152 N.Y.S.3d 265 (Erie Sup. Ct. 2021). Parties have not cited any other authority on this issue, and the Court has found none.

general election, Plaintiff must begin soliciting signatures from registered voters no earlier than April 15, 2025, and file the independent nominating petition between May 20, 2025, and May 27, 2025.  *See* N.Y. Elec. Law §§ 6-138(4), 6-158; (Stavisky Decl. ¶ 3.)  Plaintiff's campaign is currently engaged in promoting its message and planning for petition drives.  (Decl. of Jim Walden ("Walden Decl.") ¶¶ 11–12, ECF No. 15-2.)  Plaintiff seeks to enjoin Defendants from rejecting his independent nominating petition based on the use of the word "Independence" in the name of his independent body.  (Pl.'s Mem. at 1–2.)  Plaintiff asserts that enforcing the Independence Ban against him (1) restricts his rights of speech and association in violation of the First Amendment and (2) treats him worse than Parties in violation of the Fourteenth Amendment.[3]  (*Id*. at 14.)

## STANDARD OF REVIEW

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  To obtain a preliminary injunction, a moving party must meet four requirements: (1) likelihood that the moving party will suffer irreparable harm if a preliminary injunction is not granted; (2) likelihood of success on the merits; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by relief.  *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) (citing *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)).

---

[3] Plaintiff asserts that his motion for a preliminary injunction is premised on his First Amendment claim.  (Pl.'s Mem. at 14 n.6.)  Thus, the Court need not assess Plaintiff's Fourteenth Amendment claim with respect to this motion.  However, given that the Independence Ban applies to all Parties and independent bodies indiscriminately, the Court is skeptical about Plaintiff's likelihood of success on the Fourteenth Amendment Equal Protection claim.

## DISCUSSION

### I.    Standing

On a motion for a preliminary injunction, plaintiffs must establish standing by a standard that is "at least as rigorous as the standard that applies at the summary judgment stage." *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 119 (2d Cir. 2025) ("When a preliminary injunction is sought, a plaintiff's burden to demonstrate standing will normally be no less than that required on a motion for summary judgment." (citation and alterations omitted)).  Thus, to establish standing for a preliminary injunction, "a plaintiff cannot rest on [] mere allegations, as would be appropriate at the pleading stage but must set forth by affidavit or other evidence specific facts, which for purposes of [a] summary judgment motion [would] be taken to be true." *Id*. (citing *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011)) (internal quotations and alterations omitted).  A plaintiff may satisfy the standing requirement by showing (1) an injury-in-fact, (2) that is "fairly traceable" to the alleged actions of the defendant, and (3) "a non-speculative likelihood that the injury can be remedied by the requested relief." *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 70 (2d Cir. 2019) (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106–07 (2d Cir. 2008)).

The State BOE Defendants advance two arguments regarding Plaintiff's lack of standing to pursue a claim for injunctive relief against them.  (Defs.' Mem. in Opp'n to Mot. Prelim. Inj. ("Defs.' Mem.") at 6–7, 10–11, ECF No. 15-5.)  *First*, the State BOE Defendants argue that Plaintiff fails to allege that he suffered, or is under threat of suffering, an injury-in-fact.  (*Id*. at 6–7.)  More specifically, the State BOE Defendants contend that Plaintiff does not face the requisite concrete and particularized injury because, on its face, Section 2-124 applies only to Parties and not to independent bodies.  (*Id*.)  The State BOE Defendants' argument, however,

ignores the only legal authority on this point, which supports the proposition that Section 6-138(3)(f) renders Section 2-124(2) applicable to independent bodies. *See Healy-Case v. Garcia*, 152 N.Y.S.3d 265, 266 (Erie Sup. Ct. 2021); *see also supra* note 2. Moreover, this argument contradicts the State BOE Defendants' own assertion that "[t]he name of [an] independent body, as provided by [Section 6-138(3)(f)] must . . . conform to the requirements applicable to the names of [Parties]." (Stavisky Decl. ¶ 4.)

*Second*, the State BOE Defendants argue that, even if Plaintiff could demonstrate that he is under threat of suffering an injury, any injury caused by the enforcement of Section 2-124 against Plaintiff is not fairly traceable to the conduct of the State BOE and, thus, is not redressable by an injunction against the State BOE. (*Id*. at 10–11.) In making this argument, the State BOE highlights that the authority to accept or reject Plaintiff's independent nominating petition rests with the City BOE, and any appeal of that decision would be adjudicated by the New York State Supreme Court. (*Id*. at 8, 10–11.) Therefore, according to the State BOE Defendants, any alleged injury Plaintiff may suffer is not traceable to the State BOE's conduct because it has no role in determining the validity of Plaintiff's independent nominating petition, nor does it have any involvement in the appeal of that determination. (*Id*.) This argument is certainly attractive, but ultimately, it does not hold.

As a matter of law, "a state official may properly be made a party to a suit seeking to enjoin the enforcement of an allegedly unconstitutional act if that official plays some role in the enforcement of the act.'" *Schulz v. Williams*, 44 F.3d 48, 61 n.13 (2d Cir. 1994) (quoting *Donohue v. Bd. of Elec. of N.Y.,* 435 F. Supp. 957, 963 (E.D.N.Y.1976)). Importantly, a plaintiff is not required to demonstrate that the defendant is directly responsible for enforcing the law to establish that his injury is fairly traceable to the actions of the defendant. That is, even where a

third party is directly responsible for a plaintiff's alleged injury, a plaintiff can show that said injury is fairly traceable to the actions of a defendant if the plaintiff establishes that the defendant's actions had a "determinative or coercive effect upon the action of [the third party]," thus causing the injury. *See Bennett v. Spear*, 520 U.S. 154, 169 (1997) ("While, as we have said, it does not suffice if the injury complained of is the result of the independent action of some third party not before the court, that does not exclude injury produced by determinative or coercive effect upon the action of someone else." (internal citations and alterations omitted)).

The Second Circuit's decision in *Schulz v. Williams*, cited by Plaintiff, is illustrative of this point. 44 F.3d 48 (2d Cir. 1994). In *Schulz*, the Libertarian Party, an independent body, among others, challenged a statute that required local boards of election to automatically supply lists of registered voters to Parties, but not to independent bodies. *Id*. at 60. The plaintiffs alleged that the statute discriminated against independent bodies in favor of Parties, in that such lists were provided to their adversaries and could have aided the plaintiffs in their petitioning efforts if made available to them. *Id*. The State BOE argued that it was not a proper party to the action because the local boards of elections were responsible for supplying the lists, not the State BOE. *Id*. at 61 n.13. The Second Circuit found that members of the State BOE were proper parties because, pursuant to N.Y. Elec. L § 3-104, the State BOE holds ultimate responsibility for the enforcement of statutes governing campaigns, elections, and related procedures. *Id*. Accordingly, the State BOE "ha[d] the requisite 'special relation' to the contested provision to

render them proper defendants. *Id*. (citing *Ex parte Young,* 209 U.S. 123, 157 (1908)).[4]  The instant case is not unlike *Schulz*.

Here, it is undisputed that the State BOE does not make the determination about the approval or rejection of Plaintiff's independent nominating petition.  (*See* Stavisky Decl. ¶ 17; Compl. ¶ 12.)  Indeed, the complaint itself acknowledges that the City BOE "is the local board of elections responsible for administering the 2025 election for New York City Mayor, including processing, verifying and accepting or rejecting nominating petitions of independent bodies." (Compl. ¶ 12.)  However, the State BOE possesses general enforcement powers under New York election law.  *See* N.Y. Elec. Law § 3-104 ("The state board of elections shall have jurisdiction of, and be responsible for, the execution and enforcement of . . . statutes governing campaigns, elections and related procedures."); N.Y. Elec. Law § 3-102 ("[T]he state board of elections shall have the power and duty to issue instructions and promulgate rules and regulations relating to the administration of the election process, election campaign practices and campaign financing practices consistent with the provisions of law.").  Thus, although the State BOE does not make the ultimate determination on Plaintiff's nominating petition, its general enforcement powers give it the requisite determinative or coercive effect on the City BOE's determination to accept or reject Plaintiff's nominating petition.  In other words, the State BOE has the authority to coerce the City BOE into enforcing the Independence Ban against Plaintiff.  Before this Court, the State BOE Defendants represented that "the interpretation of the State [BOE] regarding the

---

[4] *See also Gallagher v. New York State Bd. of Elections*, 477 F. Supp. 3d 19, 36 (S.D.N.Y. 2020) (holding that a plaintiff's injury was fairly traceable to the State BOE because "[i]f the [c]ourt were to rule that the enforcement of the postmark requirement [under those circumstances] was unconstitutional, the State Defendants would have the power to promulgate a directive enforcing that determination"); *Democratic Cong. Campaign Comm. ("DCCC") v. Kosinski*, 614 F. Supp. 3d 20, 46 (S.D.N.Y. 2022) (holding that injuries stemming from a law that, on its face, required the rejection of those particular ballots, was fairly traceable to the State BOE because "any injuries resulting from failing to count those ballots [were] produced by determinative effect upon the actions of [the State BOE]").

applicability of Section 2-124 as to [Section] 6-138 will not be enforced against local boards of elections, and also as against Mr. Walden's candidacy." (*See* Tr. of Mar. 14, 2025 Hearing ("Hearing Tr.") 15:21–25.)  However, by letter dated March 17, 2025, the City BOE informed the Court that the City BOE "will be obligated to apply [the] law as written, consistent with the State [BOE]'s position on the law." (*See* City BOE's Ltr. Pursuant to Court Order, ECF No. 18.) This is the very sort of enforcement authority that triggers the State BOE's "special relation" to the challenged provision and renders the State BOE Defendants proper parties. *See Schulz*, 44 F.3d at 61 n.13.  Against this backdrop the Court cannot conclude that Plaintiff's purported injury is not traceable to the State BOE.

Plaintiff has standing to bring his claim against the State BOE Defendants.

## II.    First Amendment Claim

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotations and citation omitted).  In fact, where irreparable harm has not been demonstrated, the Court need not consider any of the other requirements necessary for the grant of injunctive relief.  *See Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 67 (2d Cir. 2007) ("[T]he moving party must first demonstrate that [irreparable harm] is likely before the other requirements for the issuance of an injunction will be considered." (internal quotation marks and citation omitted)).  Importantly, when a plaintiff's First Amendment right has been violated, particularly the right to engage in political speech, "the irreparable harm requirement for the issuance of a preliminary injunction has been satisfied." *Green Party of New York State v. New York State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir. 2004); *see also Elrod v. Burns,* 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, even for minimal

periods of time, unquestionably constitutes irreparable injury."); *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) ("The harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as timing is of the essence in politics and a delay of even a day or two may be intolerable." (quoting *Klein v. City of San Clemente,* 584 F.3d 1196, 1208 (9th Cir. 2009)).  For this to be true, of course, there must be a finding that Plaintiff's First Amendment right was violated.  Therefore, whether Plaintiff faces the likelihood of irreparable harm necessarily turns on whether the plaintiff has shown a clear likelihood of success on the merits of his First Amendment claim.  *Beal v. Stern*, 184 F.3d 117, 123–24 (2d Cir. 1999).

"The First Amendment protects the right of citizens to associate and to form political parties for the advancement of common political goals and ideas." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357 (1997) (citing *Colorado Republican Federal Campaign Comm'n v. Federal Election Comm.,* 518 U.S. 604, 616 (1996)).  Political parties, like individuals and candidates, have a "core" First Amendment right to express their views.  *Colorado,* 518 U.S. at 616 ("The independent expression of a political party's views is 'core' First Amendment activity no less than is the independent expression of individuals, candidates, or other political committees.").  That said, the Constitution also affords states broad power to regulate the times, places, and manner in which elections are held.  Art. I, § 4, cl. 1.  Indeed, "[e]very provision of a state elections code . . . inevitably affects—at least to some degree—[an] individual's right to vote and his right to associate with others for political ends." *Price v. New York State Bd. of Elections*, 540 F.3d 101, 107–08 (2d Cir. 2008) (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 788 (1983)).  As such, the inquiry into whether a challenged election law is unconstitutional begins, not with the question of whether the law burdens a plaintiff's First Amendment right, but

11

rather, the extent to which the law burdens that right.  On this point, the Court turns to the

Supreme Court's decision in *Burdick v. Takushi* to guide its inquiry.

In *Burdick*, the Supreme Court established a balancing test whereby

[a] court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.

504 U.S. 428, 434 (1992) (citations and quotations omitted).  "[T]he rigorousness of [a court's]

inquiry into the propriety of a state election law depends upon the extent to which a challenged

regulation burdens First and Fourteenth Amendment rights."  *Id*.  If the burden posed by the

challenged regulation is "severe," a court must apply strict scrutiny and determine whether the

regulation is "narrowly drawn to advance a state interest of compelling importance."  *Norman v.

Reed,* 502 U.S. 279, 289 (1992).  Alternatively, "when a state election law provision imposes

only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment

rights of voters, 'the [s]tate's important regulatory interests are generally sufficient to justify'"

the restrictions.  *Burdick*, 504 U.S. at 434 (citing *Anderson,* 460 U.S. at 788).  Here, Plaintiff

complains that the state election law Section 2-124(2), read with Section 6-138(3)(f), poses a

severe burden on his core political speech to the extent it precludes him from naming his

independent body the "Independence Party."  (Pl.'s Mem. at 15–16.)  The Court disagrees.

Certainly, "restrictions on core political speech so plainly impose a 'severe burden.'"

*Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 146 (2d Cir. 2000).  However, not

all political speech rises to the level of "core political speech."  Rather, a regulation restricts core

political speech where the regulation places restrictions on the "[d]iscussion of public issues and

debate," the "interchange of ideas for the bringing about of political and social changes desired

by the people," the "free discussion of governmental affairs . . . includ[ing] discussions of candidates," "interactive communication concerning political change," or "the expression of a desire for political change and a discussion of the merits of the proposed change." *See, e.g., McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995) (citations and internal quotation marks omitted); *Lerman*, 232 F.3d 135, 146; *Meyer v. Grant,* 486 U.S. 414, 421–22 (1988) (citations and internal quotation marks omitted).

*Timmons v. Twin Cities Area New Party* is instructive here.  In *Timmons*, candidates of a minor party challenged Minnesota's anti-fusion laws that prohibited a candidate from appearing on the ballot as the candidate of more than one party.  *Timmons*, 520 U.S. at 363–64.  The plaintiffs, a chapter of the national New Party, asserted that the laws severely burdened the party's First Amendment associational rights.  *Id*. at 355.  The Supreme Court disagreed. Ultimately, the Supreme Court held that the burden imposed by the state law was not severe because the law "d[id] not restrict the ability of the [party] and its members to endorse, support, or vote for anyone they like," "[t]he laws d[id] not directly limit the party's access to the ballot," and the laws were "silent on parties' internal structure, governance, and policymaking." *Id*. at 363.  Indeed, according to the Supreme Court, the fact that the law "limit[ed], slightly, the party's ability to send a message to the voters and to its preferred candidates" did not amount to a severe burden warranting strict scrutiny analysis.  *Id*.; *see also Burdick,* 504 U.S. at 436–37 (holding that a Hawaii law prohibiting voters from writing in candidates on the ballot did not amount to a severe restriction on speech because candidates otherwise had ease of access to the ballot); *Maslow v. Bd. of Elections in City of New York*, 658 F.3d 291, 294, 298 (2d Cir. 2011) (affirming that a state law requiring designating petition circulators to be enrolled voters of the same political party as the voters qualified to sign the petition did not severely burden plaintiff's

13

First Amendment right because "[t]he candidate plaintiffs in this case have ample access to the ballot both in the primary and general elections.").  As the Supreme Court observes, "[b]allots serve primarily to elect candidates, not as forums for political expression."  520 U.S. at 363.

In this case, Plaintiff presses that his core political message is one of "independence from the major parties."  (Pl.'s Mem. at 10–11.)  In describing this message, Plaintiff highlights for the Court that, for example, "his platform promises that he will not make patronage appointments, will make City agencies subject to external review to prevent corruption, and will forbid his administration from doing favors for financial contributors."  (*Id*.)  Plaintiff adds that he "has promised to fight to end political gerrymandering, a longstanding practice designed to entrench the power and influence of the [m]ajor [p]arties."  (*Id*. at 11.)  However, fatally, Plaintiff fails to demonstrate how his inability to use the name "Independence Party" for his independent body would prevent him from spreading these messages to his supporters and other voters at large.

Plaintiff is not prevented from broadcasting his political platform and policy commitments on his website and in the media.  Indeed, Plaintiff maintains a robust campaign website articulating his political platform, priorities, and policy commitments.[5]  Plaintiff is likewise not hindered from soliciting donations and endorsements from potential supporters.[6]  Moreover, Plaintiff is not restricted from using a panoply of other available words, including numerous synonyms for "independence," to reflect his message of independence from the major political parties.  As well, the Independence Ban does not dictate the "governance, structure, or policymaking" of Plaintiff's independent body, directly limit Plaintiff's access to the ballot, or

---

[5] *See* Jim Walden for Mayor of NYC, https://jimfornyc.com (last visited Apr. 4, 2025).

[6] *See Financial Summary for James Walden*, N.Y.C Campaign Fin. Bd., https://www.nyccfb.info/VSApps/CandidateSummary.aspx?as_cand_id=2903&as_election_cycle=2025&cand_name=Walden,%20James&office=Mayor&report=summ (last visited Apr. 4, 2025); *Endorsements*, Jim Walden for Mayor of NYC, https://jimfornyc.com/category/endorsements/ (last visited Apr. 4, 2025).

otherwise keep Plaintiff's supporters from being able to vote for him.  Because Plaintiff retains such latitude to disseminate his political message and unencumbered access to the ballot, the restriction imposed by the Independence Ban cannot be considered severe.  *Timmons*, 520 U.S. at 363 (holding that where "[a] party retains great latitude in its ability to communicate ideas to voters and candidates through its participation in [a] campaign, and party members may campaign for, endorse, and vote for their preferred candidate," a restriction is not likely to be considered severe).

Resisting this conclusion, Plaintiff contends that his desire to use the label "Independence Party" amounts to core political speech because he intends to "have circulators interact with voters to ask them to sign petitions nominating him as the candidate of the Independence Party." (Pl.'s Reply at 6.)  As Plaintiff's argument goes, this petition circulation activity necessarily amounts to core political speech.  (*Id.*)  Plaintiff's argument proves too much.

Certainly, as the Supreme Court has held, "the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'"  *Meyer,* 486 U.S. at 421–22; *see also Lerman*, 232 F.3d at 146; *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 197–98 (1999).  Consistent with that notion, in *Lerman v. Bd. Of Election*, *Meyer v. Grant*, and *Buckley v. Am. Const. L. Found., Inc.*, all cited by Plaintiff, the Supreme Court struck down laws that placed certain restrictions on the act of circulating petitions or otherwise limited a candidate's ability to circulate petitions.  *Lerman*, 232 F.3d at 139 (challenging a law requiring witnesses for designating petition signatures to be a resident of the political subdivision in which the candidate is running for office); *Meyer*, 486 U.S. at 421 (challenging a law prohibiting paying circulators of initiative or referendum petitions); *Buckley,* 525 U.S. at 197–98 (challenging a law requiring petition circulators to wear identification

badges).  Those cases are inapposite.  Here, Plaintiff does not maintain—nor could he—that the Independence Ban actually proscribes his ability to engage in petition circulation activity.  That is, Plaintiff does not complain, for example, that the challenged law places any restriction on who can sign his petition, who can help him circulate his petition, or what messages he can convey while he is in the process of circulating his petition.  Thus, Plaintiff cannot credibly maintain that his inability to call his independent body the "Independence Party" will impede his ability to circulate petitions for his candidacy and to interact and communicate with his supporters.  The burden imposed by the Independence Ban is not severe.

Because the Independence Ban does not amount to a severe burden on Plaintiff's First Amendment right, the Court need only evaluate whether "the State's important regulatory interests are generally sufficient to justify" the restriction.  *Burdick*, 504 U.S. at 434.  Under this standard, "the State's reasonable and nondiscriminatory restrictions will generally be sufficient to uphold the statute if they serve important state interests."  *Price*, 540 F.3d at 109; *see also Timmons,* 520 U.S. at 358 ("Lesser burdens . . . trigger less exacting review, and the State's 'important regulatory interests' will usually be enough to justify 'reasonable nondiscriminatory' restrictions.").  Moreover, a court's review of the challenged restriction and the state's related interest "will be quite deferential, and [] will not require 'elaborate, empirical verification of the weightiness of the State's asserted justifications.'"  *Price*, 540 F.3d at 109 (quoting *Timmons,* 520 U.S. at 364).

Defendants contend that the Independence Ban is sufficiently related to the state's goal of preventing voter confusion.  (Defs.' Mem. at 17–18.)  From 1991 to 2020, a Party named the "Independence Party" operated in New York.  (Defs.' Mem. at 18.)  During this period, some voters reported that they believed they were registered as "independent voters," when they were,

16

in fact, enrolled in the Independence Party.  (Stavisky Decl. ¶¶ 12, 16.)  Indeed, at that time—

and still today—New York's voter registration form used the word "independent" to describe

voters who are not enrolled in a Party "in order to provide clarity [by] using language commonly

understood by voters."  (Defs.' Mem. at 4.)  On voter registration forms, voters are given the

option to enroll in a Party or to select that they "wish to be an independent voter."  (New York

State Voter Registration Form at 1.)  In 2022, to prevent the aforementioned confusion, the state

legislature added the words "Independence" and "Independent" to the short list of words

prohibited from use in Party names.  *See* N.Y. Elec. Law § 2-124(2).

Defendants' concern about the inadvertent enrollment of independent voters in an

"Independence Party" is one justification for the Independence Ban.  Defendants further contend

that the Independence Ban is justified because the use of "Independence" or "Independent" in the

name of a Party or independent body on the ballot could be conflated with the "independent

voter" designation used to describe unaffiliated voters.  (Defs.' Mem. at 5.)  Thus, according to

Defendants, candidates running under the banner of an "Independence Party," for example, could

"attempt[] to claim a singular association on behalf of all voters who are not enrolled in a party."

(Defs.' Mem. at 17.)  According to Defendants, this could create a misleading association and

confuse voters into believing the "Independent Party" candidate listed on the ballot represents all

independent voters.  (*Id*.)

Plaintiff concedes that the state has a compelling interest in preventing voter confusion.

(Pl.'s Mem. at 17 (citing *Green Party of New York State v. New York State Bd. of Elections*, 389

F.3d 411, 421 (2d Cir. 2004) ("We do not address the question of whether the goal of preventing

voter confusion is a compelling one, because it obviously is.")).  Nonetheless, Plaintiff contends

that the Independence Ban is not sufficiently tailored to the issue of voter confusion such that the

burden it places on his First Amendment rights is warranted.[7]  (Pl.'s Mem. at 19–20; Pl.'s Reply at 9–11.)  According to Plaintiff, even if there were a risk of voter confusion caused by the use of the name "Independence Party," the reasonable solution would be to make the registration process clearer, rather than ban the use of "Independence" in a Party or independent body name. (*Id*. at 19.)

To support his contention, Plaintiff cites to *Green Party of New York State v. New York State Bd. of Elections*, a case where plaintiffs challenged a New York election law regarding the reclassification of voters who were enrolled in a Party that subsequently loses its status as a Party.  389 F.3d 411 (2d Cir. 2004).  The challenged law required those voters to be converted into non-enrolled voters, no longer affiliated with their former Party and consequently removed from its rolls.  *See id*. at 415.  As a result, the former Party could no longer ascertain which voters were previously affiliated with it.  *Id*. at 421.  Defendants in *Green Party* argued that the law was necessary to prevent voter confusion because reclassifying these voters as non-enrolled would prevent them from believing they were still enrolled in a Party and able to vote in a primary election.  *Id*. at 422.  The district court disagreed.

Upon review, the Second Circuit affirmed the district court and held that the challenged restriction amounted to a severe burden on the plaintiffs' First Amendment associational right

---

[7] Plaintiff further argues that the state's justification for the implementation of the Independence Ban cannot be reasonable because the restriction itself is "woefully underinclusive."  (Pl.'s Reply at 11.)  That is, according to Plaintiff, if Defendants had a valid interest in preventing voter confusion about whether a candidate represented all unaffiliated voters, it would also prohibit a candidate from using words or phrases like "Nonpartisan," "Unaffiliated," or "No Party," which communicate the same message that "Independent" and "Independence" do. Yet, according to Defendants, the New York voter registration form specifically uses the term "independent voter" to refer to such unaffiliated voters. (Defs.' Mem. at 4–5.)  As such, to address the concern, they need not include the other words or phrases. Indeed, to do so would be overly broad.  Moreover, the Court cannot help but note that Plaintiff's recital of the litany of words that have the same meaning as "Independence" only makes plain that Plaintiff has any number of alterative words still available to him to further his own ends.

because the law significantly hampered "the Green Party's ability to identify, appeal to, inform, organize, mobilize and raise money from its supporters." *Id*. at 420–21 (citation and internal quotation marks omitted). Given this severe burden, the court analyzed the challenged law under strict scrutiny. *Id*. at 422. Applying that standard, the Second Circuit ultimately concluded that the challenged law was not sufficiently tailored and that the Defendants had less restrictive means to achieve the state interest. *Id*. This case is clearly distinguishable. Unlike in *Green Party*, as this Court has already concluded, the Independence Ban does not amount to a severe burden on Plaintiff's First Amendment rights. Therefore, it is of no matter whether the state could have taken less restrictive means to achieve its goals. Indeed, the Court must only consider whether the state's important interest in preventing voter confusion sufficiently justifies the enforcement of the Independence Ban. It does.

Next, Plaintiff argues that, even if the ban was somehow appropriately tailored, Defendants only speculate that voters will be misled by the use of "Independence Party" on a voter registration form or ballot. (Pl.'s Reply at 10.) Therefore, according to Plaintiff, preventing voter confusion is not a reasonable justification for the enforcement of the Independence Ban. (*Id*.) To support this argument, Plaintiff directs the Court to *Washington State Grange v. Washington State Republican Party*. 552 U.S. 442 (2008). There, the Supreme Court upheld a Washington law establishing a blanket primary system in which a candidate designates their party-preference, but the party is not able to select its own candidate. *Id*. at 454–55. In *Washington*, the Washington State Republican Party asserted that the blanket primary system would result in voters misinterpreting a candidate's party-preference designation as an endorsement of the nominee by the party, thus forcing the party to associate with candidates that they may not endorse. *Id*. In rejecting the Republican Party's argument, the Supreme Court held

19

that, although it is possible that voters will misinterpret the candidates' party-preference designation as an endorsement by the party, the court could not strike down the law on its face based on the mere possibility of voter confusion. *Id.* Moreover, the court noted that the Republican Party's argument depended on the belief that voters could be misled by party labels, and that the court had "a greater faith in the ability of individual voters to inform themselves about campaign issues." *Id.* at 454.

Plaintiff's reliance on *Washington* is an unconvincing attempt to turn the Court's analysis on its head. The question presented to the *Washington* court was whether the reason underlying the plaintiff's objection to a state referendum—the possibility of voter confusion—was a sufficient basis to strike down the law as facially unconstitutional. *Id.* The question here is whether the state's aim to prevent voter confusion is a legitimate and reasonable basis for enacting the law in the first place. It is. This is particularly so where the Court must afford deference to the state legislature's justification for enacting the law. *See Price*, 540 F.3d at 109. Therefore, Defendants sufficiently demonstrate that the aims of the Independence Ban are reasonably related to the state's interest in preventing voter confusion. As such, the Independence Ban does not unconstitutionally infringe on Plaintiff's First Amendment rights.

As an alternative argument, Plaintiff contends that the Independence Ban warrants analysis under strict scrutiny because it amounts to a "content-based" restriction on his speech, which is presumptively unconstitutional. (Pl.'s Reply at 6–7.) To support this argument, Plaintiff directs the Court to a Massachusetts state court decision from 1981 where plaintiffs challenged a state law restricting the use of the word "Independent" on nominating petitions and on the ballot. *Bachrach v. Sec'y of Com.*, 382 Mass. 268, 274–75 (1981). There, the challenged law stated that a candidate's failure to make a political designation would result in the use of the

20

word "Unenrolled" to define them on the ballot. *Id*. at 269. The Massachusetts court determined that the restriction was an unconstitutional content-based restriction on the candidate's First Amendment right to engage in political speech. *Id*. This case is of little help to Plaintiff.

The Court does not take issue with Plaintiff's contention that content-based restrictions in public forums demand strict scrutiny. However, nonpublic forums may be subject to content-based restrictions if the restrictions are reasonable and viewpoint neutral. *Minnesota Voters All. v. Mansky*, 585 U.S. 1, 2 (2018) (holding that a polling place is a nonpublic forum and "[a]s such it may be subject to content-based restrictions on speech, so long as the restrictions are reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." (internal citations and quotations omitted)). As such, Plaintiff's argument that the Independence Ban is an unconstitutional content-based law is only tenable if the nominating petition is deemed to be a public forum. It is not.

As put by Chief Justice Roberts, "the state controls the content of the ballot, which we have never considered a public forum." *Wash. State Grange*, 552 U.S. at 461 (Roberts, C.J., concurring). It is axiomatic that if the ballot is not a public forum, neither is the nominating petition that serves as vehicle for obtaining access to the ballot. Thus, the Independence Ban is constitutional if it is reasonable and viewpoint neutral. *See Minnesota Voters All.*, 585 U.S. at 2. It is. The Independence Ban applies equally to all Parties and independent bodies, regardless of the message being communicated. *See* N.Y. Elec. Law § 2-124(2). There can be no reasonable argument that the Independence Ban is viewpoint-based. Given its neutrality, even if the

21

Independence Ban is a content-based restriction, it need only be reasonable to be constitutional.[8] The Court has found it is. *See supra* pp. 16–20.

* * *

For the reasons stated above, Plaintiff has not shown a likelihood of success on the merits of his First Amendment claim.  As such, Plaintiff has also not shown likelihood of irreparable harm. Therefore, the Court need not reach the balance of equities, and the preliminary injunction must be denied.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
     April 4, 2025

/s/ LDH
LASHANN DEARCY HALL
United States District Judge

---

[8] Plaintiff's reliance on *Reed v. Town of Gilbert, Ariz.*, to support his argument that the Independence Ban is a content-based restriction warranting strict scrutiny is also inapposite.  576 U.S. 155 (2015).  There, the Supreme Court found that a town's sign code—which subjected signs that conveyed political or ideological messages to different restrictions than other signs—was a content-based restriction.  *Id.* at 164–65.  In *Reed*, the court applied strict scrutiny because the signs in question were, undoubtedly, on public property.  *Id.* at 173 ("[O]n public property, the Town may go a long way toward entirely forbidding the posting of signs, so long as it does so in an evenhanded, content-neutral manner.").  Here, as the Court noted above, even if the Independence Ban is a content-based restriction, neither the ballot, nor Plaintiff's nominating petition, is a public forum.  Therefore, strict scrutiny does not apply.